# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| RAMIRO FELIX GONZALES, <br> *Plaintiff*, <br><br> v. <br><br> BRYAN COLLIER, <br> Executive Director, <br> Texas Department of Criminal Justice, Huntsville, Texas; <br><br> BOBBY LUMPKIN, Director, <br> Texas Department of Criminal Justice, Correctional Institutions Division, Huntsville, Texas; <br><br> and <br><br> DENNIS CROWLEY, Warden, <br> Texas Department of Criminal Justice, Huntsville Unit, Huntsville, Texas, <br><br> *Defendants* | Civil Case No. _____ <br><br><br><br> ***EXECUTION SCHEDULED FOR APRIL 20, 2021*** |

## COMPLAINT PURSUANT TO 42 U.S.C. § 1983

# INTRODUCTION

1. Plaintiff Ramiro Felix Gonzales is a devout Christian. He is also incarcerated at the Polunsky Unit of the Texas Department of Criminal Justice ("TDCJ") under a sentence of death.

2. On April 20, 2021, the State of Texas intends to execute Mr. Gonzales under conditions that violate the First Amendment's Free Exercise Clause and substantially burden the exercise of his religion in violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq.

3. Through the requisite TDCJ administrative channels, Mr. Gonzales requested the presence of his spiritual advisor in the execution chamber at the time of his execution. His request was denied, and he has properly exhausted the administrative remedies available to him under institutional policy.

4. Relief is necessary to ensure that he is executed only in a manner that does not substantially burden the exercise of his religious beliefs and does not violate his rights under the Free Exercise Clause or RLUIPA.

# JURISDICTION

5. This Court has jurisdiction under 42 U.S.C. §§ 2000cc-1, 28 U.S.C. §§ 1343, 1651, 2201, and 2202, and under 42 U.S.C. § 1983.

## VENUE

6. Venue lies in this Court under 28 U.S.C. § 1391 because Defendants maintain offices in the Southern District of Texas. Venue is also proper because the execution will occur in this district.

## PARTIES

7. Plaintiff Ramiro Gonzales is incarcerated under a sentence of death at the Polunsky Unit of TDCJ. He is scheduled to be executed by the State of Texas on April 20, 2021.

8. Defendant Bryan Collier is the Executive Director of TDCJ. He is being sued in his official capacity.

9. Defendant Bobby Lumpkin is the Director of the Correctional Institutions Division of TDCJ. He is being sued in his official capacity. The state trial court has ordered Mr. Lumpkin to carry out Mr. Gonzales's scheduled execution.

10. Defendant Dennis Crowley is the Senior Warden of the Huntsville Unit, where the State of Texas carries out executions. He is being sued in his official capacity. Because Mr. Crowley is the warden of the Huntsville Unit, he is responsible for supervising the scheduled execution in this case.

## PROCEDURAL HISTORY

11. Plaintiff Ramiro Gonzales was tried and convicted of capital murder charges arising from the death of Bridget Townsend in Bandera County, Texas, in January 2001. The Texas Court of Criminal Appeals ("CCA") affirmed the conviction and

sentence on appeal in *Gonzales v. State*, No. AP-75,540, 2009 WL 1684699 (Tex. Crim. App. Jun. 17, 2009) (not designated for publication). The CCA denied relief in Mr. Gonzales's initial state habeas proceeding. *Ex parte Gonzales*, No. WR-70,969-01 (Tex. Crim. App. Sept. 23, 2009).

12. On October 25, 2012, Mr. Gonzales filed an amended federal habeas petition in the Western District of Texas challenging his state court conviction and sentence. On January 15, 2014, the federal district court recommended that relief be denied and also denied a certificate of appealability. *Gonzales v. Thaler*, No. 10-CV-165-OLG (W.D. Tex. Oct. 25, 2012). The Fifth Circuit affirmed the denial of relief and denied a certificate of appealability, *Gonzales v. Stephens*, 606 F. App'x 767 (5th Cir. 2015), and the Supreme Court denied certiorari. *Gonzales v. Stephens*, 577 U.S. 1032 (2015).

13. On September 14, 2020, on the State's motion, the trial court issued an order scheduling Mr. Gonzales's execution for April 20, 2021. On September 21, 2020, the district clerk signed the warrant of execution, and on September 23, 2020, Defendant Collier's office received the papers. Ex. A, Warrant of Execution for Ramiro Gonzales.

## FACTUAL BACKGROUND

14. Until April 2019, TDCJ allowed TDCJ-approved chaplains in the execution chamber to guide persons being executed into the afterlife according to their religious beliefs. Between 1982 and March 2019, Texas conducted 560 executions pursuant to this policy.

15. However, in March 2019, TDCJ refused inmate Patrick Murphy's request that his Buddhist spiritual advisor accompany him in the chamber during the scheduled execution. *See Murphy v. Collier*, 139 S. Ct. 1475 (2019) (mem.). After TDCJ refused Murphy's request, he filed a request for a stay of execution in the Supreme Court and sought to challenge TDCJ's decision on equal protection and First Amendment grounds. *See id.*

16. On March 28, 2019, the Supreme Court granted a stay of execution and issued an order prohibiting TDCJ from carrying out the execution "pending the timely filing and disposition of a petition for a writ of certiorari unless the State permits Murphy's Buddhist spiritual advisor or another Buddhist reverend of the State's choosing to accompany Murphy in the execution chamber during the execution." *Murphy*, 139 S. Ct. at 1475. Justice Kavanaugh wrote a concurring opinion in which he expressed his view that "the Constitution prohibits [the] denominational discrimination" of the then-existing TDCJ policy. *Id.* at 1475–76. Justice Kavanaugh observed that a potential remedy for this denominational discrimination would be to ban *all* spiritual advisors of *any* denomination from the chamber. *Id.*

17. On April 2, 2019, TDCJ revised its Execution Procedure to provide that "TDCJ Chaplains and Ministers/Spiritual Advisors designated by the offender may observe the execution *only from the witness rooms*." Ex. B, Tex. Dep't Crim. Just., Execution Procedure at 8 (Apr. 2019).

4

18. Mr. Gonzales is a devout Christian and has been so for over ten years. He has completed numerous Bible study programs and attended Shalom Bible College and Seminary through correspondence courses.

19. For the past seven years, Mr. Gonzales has received religious guidance and spiritual advice from his spiritual advisor, Bri-anne Swan, a minister and spiritual counselor. Mr. Gonzales has requested Ms. Swan's presence in the execution chamber to pray with him, provide spiritual comfort, and aid in his transition to the afterlife. Ms. Swan is willing to be in the execution chamber with Mr. Gonzales during the execution.

20. When Mr. Gonzales is executed, Ms. Swan will hold his hand, place her other (free) hand over his heart, and recite prayers over him through the process. These actions are "vitally important . . . as [he] is making his transition to the Paradise of God." Ex. C, Ramiro Gonzales, Step 1 Offender Grievance Forms (Jan. 15, 2021).

21. Ms. Swan is willing to undergo additional security screening if necessary in order to be present in the execution chamber.

22. If for any reason (other than the TDCJ's denial) Ms. Swan is not able to enter the chamber, Mr. Gonzales has invited Wayne Whiteside to join him in the chamber. Mr. Whiteside often visits TDCJ, has served as a religious advisor to Mr. Gonzales, has ministered to Mr. Gonzales, and has attended executions before.

23. On January 5, 2021, counsel for Mr. Gonzales sent a letter to TDCJ General Counsel Kristen Worman requesting clarification of various procedures related to the scheduled execution, including those related to spiritual advisors. Ex. D,

Letter from counsel for Ramiro Gonzales to Kristen Worman, Gen. Couns. of Tex. Dep't Crim. Just. at 2 (Jan. 5, 2021). Pertinent here, counsel inquired whether TDCJ would "modify, change, or otherwise alter any of its execution procedures compared to the April 2019 Execution Procedure." *Id.*

24. On January 25, 2021, General Counsel Worman responded that "[w]ith exception of preventive measures related to the COVID-19 pandemic, there are no foreseeable modifications to the TDCJ Execution Procedure policy the TDCJ intends to enact for approved execution witnesses." Ex. E, Letter from Kristen Worman, Gen. Couns. of Tex. Dep't Crim. Just., to counsel for Ramiro Gonzales at 2 (Jan. 25, 2021).

25. On January 15, 2021, Mr. Gonzales filed a "Step 1 Offender Grievance" form pursuant to TDCJ policy and requested Ms. Swan's presence during his scheduled execution. Ex. C, Ramiro Gonzales, Step 1 Offender Grievance Form (Jan. 15, 2021). On January 21, 2021, after investigation of the grievance TDCJ returned the grievance form to Mr. Gonzales, refusing his request and declaring that "no further action [was] warranted" because "a religious authority is not permitted to be in the execution chamber with an inmate." *Id.*

26. Pursuant to TDCJ policy, Mr. Gonzales appealed this initial denial of his request by filing a "Step 2 Offender Grievance" on January 24, 2021. Ex. F, Ramiro Gonzales, Step 2 Offender Grievance Form (Jan. 24, 2021). Mr. Gonzales reiterated his request that Ms. Swan be physically present in the execution chamber and that she be permitted to hold his hand and place her hand on his

6

chest while praying, actions that are "vital to [his] passing" under his religious beliefs. *Id.* On February 2, 2021, TDCJ responded to Mr. Gonzales's Step 2 request by reiterating TDCJ's April 2019 policy that "[o]nly TDCJ security personnel shall be permitted in the execution chamber" and informing him that "[n]o further relief can be granted by [the grievance] department." *Id.*

27. Mr. Gonzales has thus fully exhausted all administrative remedies available to him under TDCJ policy. Tex. Dep't Crim. Just., Offender Orientation Handbook at 73–75 (Feb. 2017).

## CLAIMS FOR RELIEF

**I. TDCJ'S PROHIBITION ON SPIRITUAL ADVISORS AND CHAPLAINS IN THE EXECUTION CHAMBER VIOLATES THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT.**

28. Mr. Gonzales incorporates paragraphs 1–27.

29. As laid out above, TDCJ's amended execution protocol violates Mr. Gonzales's First Amendment rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

30. Congress enacted RLUIPA "to provide very broad protection for religious liberty"—even "greater protection than is available under the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 356–57 (2015). Under RLUIPA, a government or state entity may not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution even if the burden results from a rule of general applicability," unless the government demonstrates that imposition of the

burden is both in furtherance of a compelling governmental interest and is also the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1 (2000).

31. Congress reinforced its intent to provide broad protection for religious liberty by defining "religious exercise" expansively as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). Indeed, just recently, the United States Supreme Court applied RLUIPA to prevent the state of Alabama from doing exactly what TDCJ is attempting to do here. *Dunn v. Smith*, 141 S. Ct. 725 (2021).

32. Clearly, then, TDCJ's policy cannot pass muster under RLUIPA. The prohibition on spiritual advisors in the chamber—and even previously approved chaplains—constitutes a substantial burden on Mr. Gonzales's religious exercise. TDCJ cannot demonstrate that this burden is in furtherance of a compelling government interest, nor that banning all spiritual advisors and previously approved chaplains is the least restrictive means of furthering any asserted interest.

33. TDCJ has defended its enactment of this discriminatory policy by alleging that "security concerns" provide the requisite justification for burdening someone's religious exercise at the final moment of their life. But as a federal judge in this district recently found, "[b]etween 1982 and March 2019 Texas conducted 560 executions . . . [and] the presence of a chaplain in the execution chamber did not cause any security incident during those years." *Gutierrez v. Saenz*, No. 1:19-cv-00185 (S.D. Tex. Nov. 24, 2020) (citations omitted) ECF Doc. 124 at *3.

34. This history of safe executions fatally undermines TDCJ's justification. Just one month ago in *Dunn v. Smith*, in a concurrence denying an application to vacate an injunction against Alabama's similar policy, four Supreme Court Justices noted that both Alabama and the Federal Government have a history of conducting safe executions in the presence of prison chaplains. 141 S. Ct. 725, 725–26 (2021) (Kagan, J., joined by Breyer, Sotomayor & Barrett, JJ., concurring in denial of application to vacate injunction). Specifically, the concurrence pointed out that Alabama required the presence of prison chaplains up until two years ago, and that in the past year the "Federal Government has conducted more than 10 executions attended by the prisoner's clergy of choice." *Id.* It then relied on this history to conclude that "a prison may ensure security without barring all clergy members from the execution chamber." *Id.* at 725.

35. Likewise, the prior 37 years of uneventful executions in Texas and the 10 federal executions within the past year undermine the argument that TDCJ's post-*Murphy* policy achieves the compelling interest of security. No alternative means of exercising this fundamental right remains open to condemned inmates seeking to transition to the afterlife in the manner prescribed by their faith—TDCJ has prohibited both spiritual advisors *and* TDCJ-employed chaplains from being physically present in the execution chamber. The minimal impact of accommodation of this right has already been demonstrated over the almost four decades in which TDCJ permitted chaplains to be present in the execution chamber without issue.

## II. TDCJ'S EXECUTION PROTOCOL VIOLATES THE FREE EXERCISE CLAUSE BECAUSE IT INHIBITS THE FREE EXERCISE OF MR. GONZALES'S CHRISTIAN FAITH.

36. Mr. Gonzales incorporates paragraphs 1–35.

37. The First Amendment also commands that "Congress shall make no law . . . prohibiting the free exercise of" religion. U.S. Const., amend. I. The Free Exercise Clause applies to state government actions. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the protections of the Free Exercise Clause are incorporated by the Fourteenth Amendment against the States).

38. Application of TDCJ's policy prohibiting spiritual advisors and chaplains in the execution chamber will inhibit the exercise of Mr. Gonzales's Christian faith and will prevent the performance of essential religious customs in the critical moments as Mr. Gonzales transitions into the afterlife. When considering laws or policies that inhibit the free exercise of religion, reviewing courts must first determine whether the law is neutral and generally applicable. *Church of the Lukumi Babulu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). A law or policy that is not *both* neutral and of general applicability "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.*

39. TDCJ's policy is not neutral because it evinces a hostility toward religion by denying religious exercise at the precise moment it is needed most: when someone is transitioning from this life to the next. The policy does this on its face and clearly targets those prisoners who believe they need a spiritual advisor with them in the execution chamber. That the TDCJ enacted the policy only after the

10

Supreme Court's decision in *Murphy* is more evidence of its hostility toward religion. When given the choice between providing an accommodation to religious prisoners at their time of death and denying all of them their fundamental right, TDCJ chose the latter. TDCJ's policy is thus permissible only if it can survive strict scrutiny, which it cannot.

40. As explained above, TDCJ's asserted "security" interest is not sufficiently compelling to justify the infringement on Mr. Gonzales's First Amendment rights. In *Gutierrez, supra*, TDCJ was afforded ample opportunity to present evidence in defense of the amended protocol and did so. But, as Judge Tagle found, "the extensive evidence submitted by [TDCJ] *does not demonstrate that serious security concerns would result* from allowing inmates the assistance of a chosen spiritual advisor in their final moments. Speculative hypotheticals without evidentiary support do not create an unmanageable security risk." *Gutierrez*, No. 1:19-cv-00185, ECF #124 at *29 (emphasis supplied).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court provide relief as follows:

1. A declaratory judgment that TDCJ's policy violates Mr. Gonzales's rights under the First Amendment's Free Exercise Clause.

2. A declaratory judgment that TDCJ's policy violates RLUIPA.

3. A preliminary and permanent injunction prohibiting Defendants from executing Mr. Gonzales until they allow his spiritual advisor to be present with him in the chamber.

Respectfully submitted,

JASON D. HAWKINS
Federal Public Defender

/s/ Jeremy Schepers
Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit
Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jeremy_schepers@fd.org

/s/ Steven T. Collis
Steven T. Collis (TX 24122632)
Director, Law & Religion Clinic
University of Texas School of Law
727 E. Dean Keaton St.
Austin, TX 78705
(512) 475-9090
Steven.collis@law.utexas.edu
*Pro hac vice* motion pending

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court for the Southern District of Texas using the electronic case-filing (ECF) system of the Court. I have also provided a copy of this document to counsel for the Defendants, the Office of the Attorney General, via email at matthew.ottoway@oag.texas.gov.

<u>/s/ Jeremy Schepers</u>
Jeremy Schepers