# Exhibit A

# WARRANT OF EXECUTION

THE STATE OF TEXAS      NO.   04-02-9091-CR     IN THE 454TH DISTRICT COURT

VS.                                           OF

RAMIRO FELIX GONZALES               MEDINA COUNTY, TEXAS

TO THE DIRECTOR OF THE CORRECTIONAL INSTITUTIONS DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE AND TO THE SHERIFF OF MEDINA COUNTY, TEXAS:

    On the 25th day of August 2006, the above-named defendant, in the above-styled and numbered cause, was convicted of the offense of capital murder. On the 6th day of September 2006, the Court sentenced the above-named defendant to death in accordance with the findings of the jury, pursuant to the Texas Code of Criminal Procedure.

    The Court, having received the Court of Criminal Appeals's mandate affirming the above-named defendant's conviction for capital murder and having received notice of the Court of Criminal Appeals's denial of the defendant's initial application for writ of habeas corpus, sentenced the above-named defendant to death for the offense of capital murder and ORDERS that the execution be had on the 20th day of April 2021, at any time after the hour of 6:00 p.m. at the Correctional Institutions Division of the Texas Department of Criminal Justice at Huntsville, Texas.

    The Sheriff of Medina County, Texas, is hereby commanded to transport the defendant to the Correctional Institutions Division of the Texas Department of Criminal Justice and deliver the defendant, if not previously delivered, and this warrant to the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice for the purpose of executing this warrant, and to take from the Director the proper receipt for the defendant, if not previously delivered, and the sheriff will return the receipt to the office of the District Clerk of Medina County, Texas.

    The Director of the Correctional Institutions Division of the Texas Department of Criminal Justice is hereby commanded to receive from the Sheriff the defendant, if not previously delivered, and this warrant, and to give his receipt to the Sheriff, and to safely keep the defendant and to execute the sentence of death at any time after the hour of 6:00 p.m. on the 20th day of April 2021, by causing a substance or substances in a lethal quantity to be intravenously injected into the body of the defendant sufficient to cause death, and the injection of the substance or substances into the body of the defendant to continue until the defendant is deceased, obeying all laws of the State of Texas with reference to such execution.

    Herein fail not, and due return make hereof in accordance with the law.

    Witness my signature and seal of office on this 21st day of September 2020.

CINDY FOWLER
MEDINA COUNTY DISTRICT CLERK

FILED
HOUR 3:33 pm
SEP 2 4 2020
Cindy
Dist. Clerk Medina County, Texas
By

COPY

CERTIFIED A TRUE AND CORRECT
COPY OF THE ORIGINAL RECORD.
CINDY FOWLER
MEDINA COUNTY DISTRICT CLERK

DEPUTY

SHERIFF'S RETURN

'The Sheriff of Medina County, Texas, received this writ on the **21** day of **September**, 2020, and executed the same by delivering the within-named defendant, if not previously delivered, in person and this warrant to the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice on the **23** day of **September**, 2020, and by taking his receipts for the said defendant, if not previously delivered, and this warrant, now make my return to the Clerk of the 454th District Court of Medina County, Texas, on this **24** day of **September**, 2020.

RANDY BROWN
SHERIFF OF MEDINA COUNTY, TEXAS

BY: _____
DEPUTY

On this the **23RD** day of **September**, 2020, the following papers related to cause number 04-02-9091-CR, styled THE STATE OF TEXAS v. RAMIRO FELIX GONZALES, were received from the Sheriff of Medina County, Texas.

1. One original of DEATH WARRANT to be delivered to the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice.

2. One certified Execution Order.

_____
SIGNATURE OF TDCJ OFFICIAL *Bryan Collier*

CERTIFIED A TRUE AND CORRECT
COPY OF THE ORIGINAL RECORD.
CINDY FOWLER
MEDINA COUNTY DISTRICT CLERK
_____
DEPUTY

# Exhibit B

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE

## Correctional Institutions Division



# EXECUTION PROCEDURE

## April 2019

## ADOPTION OF EXECUTION PROCEDURE

In my duties as Division Director of the Correctional Institutions Division, I hereby adopt the attached Execution Procedure for use in the operation of the Texas Department of Criminal Justice Death Row housing units and perimeter functions. This Procedure is in compliance with Texas Board of Criminal Justice Rule §152.51; §§492.013(a), 493.004, Texas Government Code, and Article 43.14 – 43.20, Code of Criminal Procedure.

Lorie Davis
Director, Correctional Institutions Division

4·2·19
Date

# EXECUTION PROCEDURES

**PROCEDURES**

### I. Procedures Upon Notification of Execution Date

A. The clerk of the trial court pursuant to Tex Code of Criminal Procedure art. 43.15 shall officially notify the Correctional Institutions Division (CID) Director, who shall then notify the Death Row Unit Warden, and the Huntsville Unit Warden of an offender's execution date. Once an execution date is received, the Death Row Unit Warden's office shall notify the Unit Classification Chief, and the Death Row Supervisor.

B. The Death Row Supervisor shall schedule an interview with the condemned offender and provide him with the Notification of Execution Date (Form 1). This form provides the offender with a list of the information that shall be requested from him (2) two weeks prior to the scheduled execution.

C. The condemned offender may be moved to a designated cell. Any keep-on-person (KOP) medication shall be confiscated and administered to the offender as needed by Unit Health Services staff.

### II. Stays of Execution

A. Official notification of a stay of execution shall be delivered to the CID Director, the Death Row Unit Warden, and the Huntsville Unit Warden through the Huntsville Unit Warden's Office. **Staff must not accept a stay of execution from the offender's attorney.** After the official stay is received, the Death Row Unit Warden's office shall notify the Unit Classification Chief and Death Row Supervisor.

B. Designated staff on the Death Row Unit shall notify the offender that a stay of execution has been received.

### III. Preparation of the Execution Summary and Packet

A. Two Weeks (14 days) Prior to the Execution

1. The Death Row Unit shall begin preparation of the Execution Summary. The Execution Summary (Form 2) and the Religious Orientation Statement (Form 3) shall be forwarded to the Death Row Supervisor or Warden's designee for completion. A copy of the offender's current visitation list and recent commissary activity shall also be provided.

2. The Death Row Supervisor shall arrange an interview with the condemned offender to gather the information necessary to complete the Execution Summary and Religious Orientation Statement.

3.  An offender may request to have his body donated to the Texas State Anatomical Board for medical education and research. The appropriate paperwork shall be supplied to the offender upon request.

4.  The Execution Summary must be completed and returned by the Death Row Supervisor or Warden's designee in sufficient time to be forwarded to the CID Director's Office by noon of the 14th day.  After approval by the CID Director, the summary shall be forwarded to the Death Row Unit Chaplain, the Huntsville Unit Warden's Office, and the Communications Department.

5.  If the offender wishes to change the names of his witnesses, and it is less than fourteen (14) days prior to the scheduled execution, the offender shall submit a request in writing to the CID Director through the Death Row Unit Warden, who shall approve or disapprove the changes.

6.  The Death Row Unit is responsible for completion of the  Execution Packet which shall include:
    a.  Execution Summary;
    b.  Religious  Orientation Statement;
    c.  Copy of the Offender Travel Card;
    d.  Current Visitation List;
    e.  Execution Watch Notification;
    f.  Execution Watch Logs;
    g.  I-25 Offender's Request for Trust Fund Withdrawal;
    h.  Offender Property Documentation (PROP-05 and PROP-08); and
    i.  Other documents as necessary.

7.  The Death Row Supervisor or the Warden's designee shall notify staff (Form 4) to begin the Execution Watch Log (Form 5).

8.  The Execution Watch Log shall begin at 6:00 a.m. seven (7) days prior to the scheduled execution.  The seven (7) day timeframe shall not include the day of the execution.  The offender shall be observed, logging his activities every 30 minutes for the first six (6) days and every 15 minutes for the remaining 36 hours.  The Communications Department may request information from the Execution Watch Log on the day of execution.

9.  The original Execution Packet and the offender's medical file shall be sent with the condemned offender in the transport vehicle to the Huntsville Unit or the Goree Unit for a female offender.  The Death Row Unit Warden shall maintain a copy of the Execution Packet on the Death Row Unit.

10. If there are any changes necessary to the Execution Packet, staff shall notify the CID Director's Office and the Huntsville Unit Warden's Office.

B. The Day of Execution

1. On the morning of the day of the execution prior to final visitation, all of the offender's personal property shall be packed and inventoried. The property officer shall complete an "Offender Property Inventory" (PROP-05) detailing each item of the offender's property. The property officer shall also complete a "Disposition of Confiscated Offender Property" (PROP-08) indicating the offender's choice of disposition of personal property.

    a. If disposition is to be made from the Huntsville Unit a copy of the property forms should be maintained by the Death Row Unit Property Officer and the originals forwarded to the Huntsville Unit with the property.

    b. If disposition is to be made from the Death Row Unit a copy of the property forms will be placed in the Execution Packet and the original forms maintained on the Death Row Unit through the completion of the disposition process.

    c. The Mountain View Unit Warden shall ensure that a female offender brings personal hygiene and gender-specific items to the Huntsville Unit as appropriate.

2. Designated staff shall obtain the offender's current Trust Fund balance and prepare the Offender's Request for Trust Fund Withdrawal (I-25) for completion by the offender.

    a. The following statement should be written or typed on the reverse side of the I-25, "In the event of my execution, please distribute the balance of my Inmate Trust Fund account as directed by this Request for Withdrawal." The offender's name, number, signature, thumbprint, date, and time should be below this statement. Two (2) employees' names and signatures should be below the offender's signature as witnesses that the offender authorized the form.

    b. This Request for Withdrawal form shall be delivered to the Inmate Trust Fund for processing by 10:00 a.m. CST the next business day following the execution.

3. A female offender may be transported to the Goree unit prior to the day of the execution. The Execution Transport Log for Female Offenders (Form 7) shall be initiated at the Mountain View Unit. The Goree Unit staff will initiate the Execution Watch Log upon arrival on the Goree Unit, permit visitation as appropriate and transport the offender to the Huntsville Unit.

The Transport Log shall resume when the offender departs the Goree Unit.

4.  The condemned offender shall be permitted visits with family and friends on the morning of the day of the scheduled execution. No media visits shall be allowed at the Goree Unit.

    NOTE: Special visits (minister, relatives not on the visitation list, attorney, and other similar circumstances) shall be approved by the Death Row or Goree Unit Warden or designee. Exceptions may be made to schedule as many family members to visit prior to the offender's scheduled day of execution. These are considered to be special visits. No changes shall be made to the offender's visitation list.

5.  The Execution Watch Log shall be discontinued when the Execution Transport Log for Male Offenders (Form 6) is initiated.

6.  When appropriate the offender shall be escorted to 12 building at the Polunsky or the designated area at the Mountain View or Goree Unit and placed in a holding cell. The appropriate Execution Transport Log shall be initiated and the offender shall be prepared for transport to the Huntsville Unit. The offender shall be removed from the transport vehicle at the Huntsville Unit and escorted by Huntsville Unit security staff into the execution holding area.

7.  Any transportation arrangements for the condemned offender between units shall be known only to the Wardens involved, the CID Director, as well as those persons they designate as having a need to know. No public announcement shall be made concerning the exact time, method, or route of transfer. The CID Director's Office and the Communications Department shall be notified immediately after the offender arrives at the Huntsville Unit

8.  When the offender enters the execution holding area the Execution Watch Log shall immediately resume. The restraints shall be removed and the offender strip-searched.

9.  The offender shall be fingerprinted, placed in a holding cell, and issued a clean set of TDCJ clothing.

10. The Warden shall be notified after the offender has been secured in the holding cell. The Warden or designee shall interview the offender and review the information in the Execution Packet.

11. Staff from the Communications Department shall also visit with the offender to determine if he wishes to make a media statement and to obtain authorization, if necessary, to release the statement.

12. The offender may have visits with a TDCJ Chaplain(s), a Minister/Spiritual Advisor who has the appropriate credentials and his attorney(s) on the day of execution at the Huntsville Unit; however, the Huntsville Unit Warden must approve all visits.

13. There shall be no family or media visits allowed at the Huntsville Unit.

## IV. Drug Team Qualifications and Training

A. The drug team shall have at least one medically trained individual. Each medically trained individual shall at least be certified or licensed as a certified medical assistant, phlebotomist, emergency medical technician, paramedic, or military corpsman. Each medically trained individual shall have one year of professional experience before participating as part of a drug team, shall retain current licensure, and shall fulfill continuing education requirements commensurate with licensure. Neither medically trained individuals nor any other members of the drug team shall be identified.

B. Each new member of the drug team shall receive training before participating in an execution without direct supervision. The training shall consist of following the drug team through at least two executions, receiving step-by-step instruction from existing team members. The new team member will then participate in at least two executions under the direct supervision of existing team members. Thereafter, the new team member may participate in executions without the direct supervision of existing team members.

C. The Huntsville Unit Warden shall review annually the training and current licensure, as appropriate, of each team member to ensure compliance with the required qualifications and training.

## V. Pre-execution Procedures

A. The Huntsville Unit Warden's Office shall serve as the communication command post and entry to this area shall be restricted.

B. Inventory and Equipment Check

1. Designated staff on the Huntsville Unit are responsible for ensuring the purchase, storage, and control of all chemicals used in lethal injection executions for the State of Texas.

2. The drug team shall obtain all of the equipment and supplies necessary to perform the lethal injection from the designated storage area.

3. An inventory and equipment check shall be conducted.

4. Expiration dates of all applicable items are to be checked on each individual item. Outdated items shall be replaced immediately.

C. Minister/Spiritual Advisor and attorney visits shall occur between 3:00 and 4:00 p.m. CST unless exceptional circumstances exist. Exceptions may be granted under unusual circumstances as approved by the Huntsville Unit Warden.

D. The offender shall be served his last meal at approximately 4:00 p.m. CST.

E. The offender shall be afforded an opportunity to shower and shall be provided with clean clothes at some time prior to 6:00 p.m. CST.

F. Only TDCJ security personnel shall be permitted in the execution chamber. The CID Director or designee and the Huntsville Unit Warden or designee shall accompany the offender while in the Execution Chamber. TDCJ Chaplains and Ministers/Spiritual Advisors designated by the offender may observe the execution only from the witness rooms.

## VI.  Set up Preparations for the Lethal Injection

A. One (1) syringe of normal saline shall be prepared by members of the drug team.

B. The lethal injection drug shall be mixed and syringes shall be prepared by members of the drug team as follows:

Pentobarbital - 100 milliliters of solution containing 5 grams of Pentobarbital.

C. The drug team shall have available a back-up set of the normal saline syringe and the lethal injection drug in case unforeseen events make their use necessary.

## VII.  Execution Procedures

A. After 6:00 p.m. CST and after confirming with the Office of the Attorney General and the Governor's Office that no further stays, if any, will be imposed and that imposition of the court's order should proceed, the CID Director or designee shall give the order to escort the offender into the execution chamber.

B. The offender shall be escorted from the holding cell into the Execution Chamber and secured to the gurney.

C. A medically trained individual shall insert intravenous (IV) catheters into a suitable vein of the condemned person. If a suitable vein cannot be discovered in an arm, the medically trained individual shall substitute a suitable vein in another part of the body, but shall not use a "cut-down" procedure to access a suitable vein. The medically trained individual shall take as much time as is needed to properly insert the IV lines. The medically trained individual shall connect an IV administration set, and start a normal saline solution to flow at a slow rate through

one of the lines. The second line is started as a precaution and is used only if a potential problem is identified with the primary line. The CID Director or designee, the Huntsville Unit Warden or designee, and the medically trained individual shall observe the IV to ensure that the rate of flow is uninterrupted.

D. Witnesses to the execution shall be brought into the appropriate viewing area ONLY AFTER the Saline IV has been started and is running properly, as instructed by the Huntsville Unit Warden or designee.

E. The CID Director or designee shall give the order to commence with the execution.

F. The Huntsville Unit Warden or designee shall allow the condemned person to make a brief, last statement.

G. The Huntsville Unit Warden or designee shall instruct the drug team to induce, by syringe, substances necessary to cause death.

H. The flow of normal saline through the IV shall be discontinued.

I. The lethal dose of Pentobarbital shall be commenced. When the entire contents of the syringe have been injected, the line shall be flushed with an injection of normal saline.

J. The CID Director or designee and the Huntsville Unit Warden or designee shall observe the appearance of the condemned individual during application of the Pentobarbital. If, after a sufficient time for death to have occurred, the condemned individual exhibits visible signs of life, the CID Director or designee shall instruct the drug team to administer an additional 5 grams of Pentobarbital followed with a saline flush.

K. At the completion of the process and after a sufficient time for death to have occurred, the Warden shall direct the physician to enter the Execution Chamber to examine the offender, pronounce the offender's death, and designate the official time of death.

L. The body shall be immediately removed from the Execution Chamber and transported by a coordinating funeral home. Arrangements for the body should be concluded prior to execution.

VIII. Employee participants in the Execution Process shall not be identified or their names released to the public. They shall receive an orientation with the Huntsville, Goree, Polunsky, or Mountain View Unit Wardens, who shall inform the employees of the TDCJ ED-06.63, "Crisis Response Intervention Support Program" (CRISP). The employees shall be encouraged to contact the Regional CRISP Team Leader following the initial participation in the execution process.

# Exhibit C

COPY

ACCEPT AS ORIGINAL

# Texas Department of Criminal Justice

# STEP 1    OFFENDER GRIEVANCE FORM

OFFICE USE ONLY

Grievance #: 2021058851

Date Received: JAN 1 5 2021

Date Due: 2-24-21

Grievance Code: 300

Investigator ID #: I2731

Extension Date:

Date Retd to Offender: JAN 2 1 2021

Offender Name: Ramiro F. Gonzales      TDCJ # 999513

Unit: Polunsky    Housing Assignment: 12/AA/13

Unit where incident occurred: Polunsky Unit

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Warden Dickerson      When? January/14/2021

What was their response? By TDCJ Policy, no Spiritual Advisor is allowed within death chamber.

What action was taken? None

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

I currently have an execution date for April/20/2021 and have requested that my Personal Spiritual Advisor be physically present with me within the death chamber. In addition, i am requesting that Bri-anne Swan, my spiritual advisor be allowed to hold my hand, and place her free hand on my chest, the left side over my heart. This action is vitally important to me at this time as i am making my spiritual transition into the Paradise of God. I have been a dedicated christian, Messianic, for over ten years now and have obtained many cirtificates of completion for many Bible studies and have also attended Shalom Bible College and Seminary through Corespondence studies. Having Bri-anne Swan with me, physically present in the death chamber will serve as a sense of tranquility, and representation of the presence of Christ, only in physical form. It would also be fulfilling to have her recite prayer over me through the process also. I am requesting this at the moment so that the religious freedoms, and rights that i have be enforced. To deny me would be denying me of my constitutional right to freedom of religion under the first Amendment and would substantially burden the exercise of my religious beliefs as protected by the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.§ 2000.

Please allow me this religious right that i may depart within the boundaries and freedoms of my spiritual beliefs.

Thank you.

I-127 Front (Revised 11-2010)     YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM     (OVER)

Appendix F

COPY

Action Requested to resolve your Complaint.
Requesting the TDCJ allow me to have my Spiritual Advisor with me within the death chamber, physically present at the time of my execution. Thank you.

Offender Signature: _Ramiro F. Gonzales_     Date: _Tuesday, 14, 2021_

Grievance Response:

Your grievance has been investigated. At this time, a religious authority is not permitted to be in the execution chamber with an inmate. No further action is warranted by this office.

Signature Authority: _B. Rigsby, AW_     Date: _12-21_

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

Returned because:    *Resubmit this form when the corrections are made.

- [ ] 1. Grievable time period has expired.
- [ ] 2. Submission in excess of 1 every 7 days. *
- [ ] 3. Originals not submitted. *
- [ ] 4. Inappropriate/Excessive attachments. *
- [ ] 5. No documented attempt at informal resolution. *
- [ ] 6. No requested relief is stated. *
- [ ] 7. Malicious use of vulgar, indecent, or physically threatening language. *
- [ ] 8. The issue presented is not grievable.
- [ ] 9. Redundant, Refer to grievance # _____
- [ ] 10. Illegible/Incomprehensible. *
- [ ] 11. Inappropriate. *

UGI Printed Name/Signature: _____

Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.

Medical Signature Authority: _____

I-127 Back (Revised 11-2010)

| OFFICE USE ONLY | |
|---|---|
| Initial Submission | UGI Initials: _____ |
| Grievance #: | |
| Screening Criteria Used: | |
| Date Recd from Offender: | |
| Date Returned to Offender: | |
| 2nd Submission | UGI Initials: _____ |
| Grievance #: | |
| Screening Criteria Used: | |
| Date Recd from Offender: | |
| Date Returned to Offender: | |
| 3rd Submission | UGI Initials: _____ |
| Grievance #: | |
| Screening Criteria Used: | |
| Date Recd from Offender: | |
| Date Returned to Offender: | |

Appendix F

# Exhibit D

January 5, 2021

Daniel Dickerson, Warden
Texas Department of Criminal Justice,
Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351
Via fax to (936) 967-6011

Kristen Worman, General
Counsel Texas Department of
Criminal Justice Office of the
General Counsel
P.O. Box 4004
Huntsville, Texas 77342
Via email to [Kristen.Worman@tdcj.texas.gov](mailto:Kristen.Worman@tdcj.texas.gov)

Dear Warden Dickerson and General Counsel Worman:

We represent Ramiro Gonzales, who is incarcerated on Death Row at the Polunsky Unit and is scheduled to be executed on April 20, 2021. We write for two reasons. First, to request information regarding TDCJ's policies and procedures regarding his upcoming execution date. Second, to request that TDCJ allow Mr. Gonzales to receive in-person visits or, in the alternative video-conferenced meetings, with his legal team and with individuals on his visitation list prior to his execution date.

## 1. Request for information regarding policies and procedures relating to Mr. Gonzales's April 20, 2021, execution date

TDCJ has instituted a number of policy and procedure changes in light of the COVID-19 pandemic, including having suspended all forms of visitation for over eight months. To ensure we are aware of necessary information to adequately represent Mr. Gonzales, please provide the following information:

1. Will the Polunsky Unit approve a contact visit with an expert to conduct an evaluation of Mr. Gonzales prior to his scheduled execution date, if requested by the legal team and if the expert is approved to enter through the standard TDCJ procedures for such a visit?

2. Will Mr. Gonzales be permitted any in-person legal visits prior to his scheduled execution?

3. Will Mr. Gonzales be permitted any in-person visits with individuals on his visitation list prior to his scheduled execution?

4. Will Mr. Gonzales be permitted any in-person spiritual advisor visits prior to his scheduled execution?

5. Will Mr. Gonzales be permitted a legal and/or spiritual advisor visit the afternoon of his scheduled execution at the Huntsville Unit?

6. Will witnesses be allowed at Mr. Gonzales's execution?

7. Will TDCJ modify, change, or otherwise alter any of its execution procedures compared to the April 2019 Execution Procedure?

If any of the above questions are unclear or if more information is needed, please contact us and we will promptly provide more detail.

## 2. *Mr. Gonzales requests that he receive reasonable access in-person visits or, in the alternative, video-conferenced meetings with his legal team and individuals on his visitation list*

Because of the restrictions on visitation prompted by the COVID-19 pandemic, Mr. Gonzales has had very limited access to his loved ones and legal team leading up to his scheduled execution. Mr. Gonzales has been restricted to phone calls, which are inadequate in light of his rapidly approaching execution date. We are writing to request that Mr. Gonzales be granted access to in-person visits or, in the alternative, video-conferenced meetings, rather than phone calls, as an alternative to in-person visitation, and that he be able to make two social video calls per week of a reasonable length. Further, we request that Mr. Gonzales not lose access to visitation or video conferencing during lockdown, given that his scheduled execution date is imminent and his time for speaking with loved ones may be limited.

Despite and during his incarceration, Mr. Gonzales is guaranteed the right to be free from cruel and unusual punishment under the Eighth

Amendment to the United States Constitution.[1] This means Mr. Gonzales's punishment and incarceration must comport with "evolving standards of decency."[2] In other words, Mr. Gonzales must be treated in accordance with "civilized standards of humanity and decency."[3]

As a prisoner, Mr. Gonzales has a constitutional right to access to the courts[4] and a right to visit with counsel regarding his case.[5] Furthermore, he has a right to seek clemency[6] among other legal remedies; representation under these conditions requires frequent and contemporaneous communication with counsel. While prison officials may restrict communications that are reasonably related to a legitimate governmental interest, "[a]ccess is essential to lawyers and legal assistants representing prisoner clients."[7] "The essence of" the right to counsel is the right to "privacy of communication with counsel."[8] Confidential communication between attorneys and clients is necessary because "the opportunity to communicate privately with an attorney is an important part" of the Fourteenth Amendment's guarantee to "meaningful access to courts."[9] Private communications with counsel and meaningful access to the courts are particularly important in cases involving imminent execution dates.[10]

---

[1] U.S. CONST. amend. VIII; *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (recognizing that "harsh conditions of confinement may constitute cruel and unusual punishment) (internal quotations omitted).

[2] *Trop v. Dulles*, 356 U.S. 86, 101 (1958).

[3] *Renchenski v. Williams*, 622 F.3d 315, 338 (3d Cir. 2010).

[4] *Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts," including the resources necessary to meaningfully exercise that right).

[5] *Lynott v. Henderson*, 610 F.2d 340, 342 n.1 (5th Cir. 1980) (recognizing a "general constitutional right to visit with . . . legal counsel").

[6] TX CONST Art. I, § 27; Art. IV, § 11.

[7] *Thornburgh v. Abbott*, 490 U.S. 401, 406 (1989).

[8] *United States v. Rosner*, 485 F.2d 1213, 1224 (2d Cir. 1973).

[9] *Dreher v. Sielaff*, 636 F.2d 1141, 1143 (7th Cir. 1980).

[10] *See Lopez v. Brewer*, 680 F.3d 1068, 1077–78 (9th Cir. 2012) (noting that counsel was

Personal visits or extended, end-to-end encrypted video conferencing[11] will better allow Mr. Gonzales to confidentially access counsel as litigation regarding his scheduled execution date progresses.

Although there is no absolute right to visitation,[12] a visitation ban could violate the Eighth Amendment if "the withdrawal of all visitation privileges were permanent" or particularly extreme.[13] As applied to Mr. Gonzales, TDCJ's current visitation and phone call policy is particularly harsh. While we understand that stricter visitation procedures may be warranted due to the spread of COVID-19, TDCJ's procedures unduly burden Mr. Gonzales. In light of his scheduled execution date, Mr. Gonzales may only have four months left to visit with his loved ones. In contrast, everyone incarcerated by TDCJ without an execution date has, or expects to have, time to visit with loved ones again after the pandemic ends.

TDCJ has itself recognized that "civilized standards of humanity and decency"[14] demand that even those who are incarcerated on death row have a right to visitation.[15] Even where visitation restrictions are reasonably necessary, correctional institutions are required to allow "reasonable and effective means of communication [to] remain open."[16] Phone calls—

"understandably" concerned about unclear rules regarding access to a client before an imminent execution, and finding that there was no penological justification for failing to allow counsel to meet with a client the morning of an execution). Congress has further recognized the importance of access to counsel during end-stage proceedings. *See Harbison v. Bell*, 556 U.S. 180, 194 (2009) ("[I]t is 'entirely plausible that Congress did not want condemned men and women to be abandoned by their counsel at the last moment and left to navigate the sometimes labyrinthine clemency process from their jail cells.'") (quoting *Hain v. Mullin*, 436 F.3d 1168, 1175 (10th Cir. 2006) (en banc)).

[11] Zoom now offers end-to-end encryption.

[12] *Renchenski v. Williams*, 622 F.3d 315, 338 (3d Cir. 2010).

[13] *Pell v. Procunier*, 417 U.S. 817, 826 (1974).

[14] *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003).

[15] *Offender Visitation*, TEX. DEP'T CRIM. J., https://www.tdcj.texas.gov/visitation/index.html (last accessed Jan. 4, 2020) ("Visitation plays an important role in maintaining the association between offenders and their friends and family as well as strengthening family ties.").

[16] *Pell*, 417 U.S. at 826.

particularly infrequent phone calls that are unduly limited in duration—are not a reasonable or effective alternative to in-person visitation with a scheduled execution date upcoming. Were pandemic restrictions not in place, Mr. Gonzales would be allowed two-hour blocks of social visitation rather than the fifteen-minute phone calls currently offered in lieu of in-person communication. Additionally, because his execution date is upcoming, Mr. Gonzales cannot reasonably communicate with loved ones if his virtual visits and calls are suspended during lockdown.

We request that TDCJ allow Mr. Gonzales in-person visitation or, in the alternative, video-conferenced meetings with his legal team and their representatives, as well as those people already on his approved visitation list, including during lockdown. We understand that the Polunsky Unit already has video conferencing software installed to allow for video participation in court hearings and we propose that it could be utilized to for this purpose as well.

If you have any questions or would like to discuss this matter, please do not hesitate to contact us.

Thank you for your attention to this important matter.

Sincerely,


**Michael Gross**
Gross & Esparza, P.L.L.C.
1524 N. Alamo Street
San Antonio, Texas 78215
(210) 354-1919
lawofcmg@gmail.com


**Jeremy Schepers**
Supervisor, Capital Habeas Unit
Northern District of Texas
525 S. Griffin Street, Suite 629
Dallas, Texas 75202
(214) 767-2746
Jeremy_Schepers@fd.org

**Thea Posel**
**Raoul Schonemann**
Capital Punishment Clinic
University of Texas School of Law
727 East Dean Keeton Street
Austin, Texas 78705
(512) 232-9391
tposel@law.utexas.edu
rschonemann@law.utexas.edu

**Counsel for Ramiro Gonzales**

# Exhibit E



# Texas Department of Criminal Justice

**Bryan Collier**
**Executive Director**

*Via: rschonemann@law.utexas.edu*

January 25, 2021

Raoul Schonemann
Clinical Professor
Capital Punishment Clinic
University of Texas School of Law
727 East Dean Keeton Street
Austin, Texas 78705

RE: Inmate Ramiro Felix Gonzales TDCJ# 00999513

Mr. Schonemann:

The Texas Department of Criminal Justice ("TDCJ") received your letter dated January 5, 2021 regarding visitation policy changes in relation to the COVID-19 pandemic and requesting your client, Ramiro Gonzales, be allowed in-person or video conference visits with individuals on his approved visitation list and legal team prior to his currently scheduled execution date.

At this time, the TDCJ will agree to your request for in-person legal visitation with Gonzales starting Tuesday, March 9, 2021. All members of the legal team will be required to follow the normal procedure for requesting a legal visit, and if approved to enter the unit, all individuals will be required to adhere to any preventive measures related to the COVID-19 pandemic as instructed by members of the TDCJ staff, such as temperature checks or wearing a face mask at all times while on the unit. There will be no direct contact with Gonzales's person or any member of the legal team during the in-person legal visit.

Additionally, the TDCJ will agree to allow in-person visitation with Gonzales, the individuals on his approved visitation list, and his approved spiritual advisor starting Sunday, April 18, 2021, through the morning of his scheduled execution date. Any visitor approved to enter the unit will be allowed in-person visitation, as long as arrangements have been made and approved through the Warden's office as required in the TDCJ *Offender Rules and Regulations for Visitation* policy.

Upon arrival at the unit, two adults, age 18 years and older, and two children, age 17 years and younger, will be permitted to enter the unit at one time starting at 8:00 a.m. and concluding at 5:00 p.m. during the first two days of scheduled in-person visitation. On the morning of April 20, 2021, TDCJ staff will inform any visitor of the specific time for which in-person visitation will conclude.

*Our mission is to provide public safety, promote positive change in offender*
*behavior, reintegrate offenders into society, and assist victims of crime.*
**Office of the General Counsel**

P.O. Box 13084 Capitol Station                                         P.O. Box 4004
Austin, Texas 78711-3084                                        Huntsville, Texas 77342-4004
Phone (512) 463-9899, FAX (512) 936-2159            Phone (936) 437-6700, FAX (936) 437-6994
www.tdcj.texas.gov

As previously explained, any visitor approved to enter the unit will be required to adhere to any preventive measures related to the COVID-19 pandemic as instructed by members of the TDCJ staff, and there will be no direct contact with Gonzales's person.

With exception of preventive measures related to the COVID-19 pandemic, there are no foreseeable modifications to the TDCJ Execution Procedure policy the TDCJ intends to enact for approved execution witnesses. Once Gonzales is transferred to the Huntsville Unit, the approved spiritual advisor and yourself, as Gonzales's attorney, will be allowed in-person visitation between 3:00 and 4:00 p.m. in accordance with the TDCJ Execution Procedure policy. All normal procedures for requesting visitation shall be followed and adherence to any preventive measures related to the COVID-19 pandemic will be continued.

If at any time, while at either the Polunsky or Huntsville Units, a member of the legal team, the individuals listed on the approved visitation list, or the approved spiritual advisor are not adhering to the instructions given by members of the TDCJ staff, including the instructions pertaining to COVID-19 preventive measures, the individual will be immediately escorted off the unit.

Due to security concerns, the TDCJ will not honor your request for video conference visits between Gonzales and individuals on his approved visitation list or legal team. However, the TDCJ will allow for extended one-hour phone calls between Gonzales and his legal team.

If you have further questions, please do not hesitate to contact this office.


Sincerely,

Kristen Worman
General Counsel

# Exhibit F



Texas Department of Criminal Justice

# STEP 2 — OFFENDER GRIEVANCE FORM

OFFICE USE ONLY

Grievance # 202105885l

UGI Recd Date: JAN 2 9 2021

Date Recd: JAN 2 9 2021

Date Due: 3/10/21

Grievance Code: #300

Investigator ID #: 12620

Extension Date:

Offender Name: Ramiro F. Gonzales   TDCJ #999513

Unit: Polunsky   Housing Assignment: 12/AA/13

Unit where incident occurred:   Polunsky

Give reason for appeal (Be Specific.)

After attempting to informally resolve this issue through a "Step 1 Grievence" but have failed at any resolution. I requested thAT "Bri-anne Swan" be my spiritual advisor during my execution. I also requested that she be physically present within the death chamber along side of my body as the execution occures so that she can place her hand in mine, and the other over/on my chest as this action is vital to my passing, and prayers as the execution occures wil also be. This is something that i am reuqesting only she do as my spiritual advisor. This right has been afforded to me through my Constitutional Right to Freedom of Religion which is under the First Amendment and would substantially burden the exercise of my religious beliefs as protected by the Religions Land Use and InstituionalizedPersons Act of 2000 (RLUIPA), 42 U.S.C. § 2000

COPY

Offender Signature: _Ronnie Gonzales_     Date: _1.24.21_

Grievance Response:

An investigation has been conducted by the Central Grievance Office. The Texas Department of Criminal Justice (TDCJ) Execution Procedure policy was amended in April 2019. Section V(F) reads: "Only TDCJ security personnel shall be permitted in the execution chamber. The CID Director or designee and the Huntsville Unit Warden or designee shall accompany the offender while in the Execution Chamber. TDCJ Chaplains and Ministers/Spiritual Advisors designated by the offender may observe the execution only from the witness rooms." No further relief can be granted by this department.

Signature Authority: _J. Riley_    **J. RILEY**    Date: _2/1/2021_

Returned because: *Resubmit this form when corrections are made.*

☐ 1. Grievable time period has expired.

☐ 2. Illegible/Incomprehensible.*

☐ 3. Originals not submitted. *

☐ 4. Inappropriate/Excessive attachments.*

☐ 5. Malicious use of vulgar, indecent, or physically threatening language.

☐ 6. Inappropriate.*

CGO Staff Signature: _____

OFFICE USE ONLY

Initial Submission    CGO Initials: _____
Date UGI Recd _____
Date CGO Recd _____
_____ checked no. _____ Screened _____ Improperly Submitted
Comments: _____
Date Returned to Offender _____
2nd Submission    CGO Initials: _____
Date UGI Recd _____
Date CGO Recd _____
_____ checked no. _____ Screened _____ Improperly Submitted
Comments: _____
Date Returned to Offender _____
3rd Submission    CGO Initials: _____
Date UGI Recd _____
Date CGO Recd _____
_____ checked no. _____ Screened _____ Improperly Submitted
Comments: _____
Date Returned to Offender _____