IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAMIRO FELIX GONZALES, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-00828 |
| | § | |
| BRYAN COLLIER, Executive Director | § | |
| of the Texas Department of Criminal | § | |
| Justice, BOBBY LUMPKIN, Director | § | |
| of the Texas Department of Criminal | § | |
| Justice–Correctional Institutions | § | |
| Division, and DENNIS CROWLEY, | § | |
| Warden of the Huntsville Unit, | § | |
| *Defendants.* | § | |

## DEFENDANTS' MOTION TO QUASH DEPOSITION NOTICES AND OPPOSED MOTION FOR ENTRY OF A PROTECTIVE ORDER

Defendants Bryan Collier, Bobby Lumpkin, and Dennis Crowley, (collectively "Defendants") move to quash four notices of depositions, served on May 5, 2022, and noticing the depositions for May 13, 2022. Defendants ask that the Court quash the deposition notices pending resolution of Defendants' motion for entry of a protective order from discovery. Defendants assert the relief sought in this lawsuit has been substantially approved by TDCJ officials thereby mooting Plaintiff Ramiro Gonzales's claims. Defendants further assert that to the extent they have not approved Gonzales's exact request regarding the manner in which he wants physical contact by his spiritual advisor in the execution chamber during his execution, the narrow remaining issue has been foreclosed by the United States Supreme Court and does not require the burdensome discovery Gonzales seeks.

**I. Procedural Posture**

1

Pending before this Court is Plaintiff Ramiro Gonzales's Complaint Pursuant to 42 U.S.C. § 1983. ECF No. 1. Gonzales alleges the Defendants intend to execute Mr. Gonzales under conditions that violate the First Amendment's Free Exercise Clause and will substantially burden the exercise of his religion in violation of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et seq. Id. at ¶2. On September 22, 2021, this Court entered an order of partial dismissal of this lawsuit. ECF No. 20. That order dismissed Mr. Gonzales's claims pertaining to the presence of his spiritual advisor in the execution chamber and directed that "claims as to whether his spiritual advisor may touch him and pray with him at that time will proceed." *Id.* at 2.

Gonzales's execution date is scheduled for July 13, 2022. The parties have completed their initial disclosures and conducted a conference pursuant to Rule 26(f) on February 7, 2022. Defendants have responded to voluminous written discovery from Plaintiff, including 29 Requests for Production, 61 Requests for Admission, 21 Interrogatories with an additional 14 discrete subparts, and production of 3,009 documents and several audio and video files.

On May 4, 2022, Gonzales's counsel served deposition notices for Bobby Lumpkin, the Director of the TDCJ Correctional Institutions Division, Dennis Crowley, Warden of the Huntsville Unit, Officer John Doe, an anonymous officer deposed in a similar lawsuit regarding his security role during the day leading up to an execution, and TDCJ pursuant to Rule 30(b)(6). These four depositions were noticed for May 13, 2022. Gonzales's counsel did not confer regarding dates or availability. Plaintiff has also served a second set of requests for production. Defendants intend to respond to Gonzales's second set of requests for production.

## II.     Resolution of Gonzales' Religious Claims

In light of the United States Supreme Court opinion in *Ramirez v. Collier*, 142 S. Ct. 1264 (March 24, 2022), Defendants have approved the following religious accommodations for Gonzales and his spiritual advisor in the execution chamber:

a. Gonzales' chosen spiritual advisor will be permitted to lay and maintain a hand on Gonzales' chest after Gonzales is secured to the gurney in the execution chamber and the IV lines are in place.

b. Gonzales's spiritual advisor will be permitted to pray aloud at a moderate volume loud enough for Gonzales to hear throughout the execution process, except that the spiritual advisor shall be silent any time the Warden or CID Director speak during the process and when Gonzales gives his last statement.

c. Gonzales's spiritual advisor will continue to be subject to the approval and vetting procedures set forth in the TDCJ Execution Policy. Defendants do not anticipate any problem, since Gonzales's spiritual advisor previously underwent a background check and credential review for Gonzales's former execution date.

Because Defendants have agreed to allow Gonzales's chosen spiritual advisor to maintain physical contact with Gonzales in the manner he requests in his Complaint and to pray aloud during the execution process, his claims for relief are substantially resolved.

The sole remaining unresolved claim for relief is Gonzales's request for his spiritual advisor, using her right hand that is not laying on his chest, to hold his hand throughout the execution process. This is not possible because allowing Gonzales's spiritual advisor to hold his hand would be too close to the IV lines and would require the spiritual advisor to stand

3

in a location that would obstruct the view of the witnesses to the execution in the witness viewing rooms. For reasons explained below, Gonzales's spiritual advisor will be allowed to place her hand on Gonzales's chest throughout the execution, but will not be able to contemporaneously hold his hand. Given the Supreme Court's direction in its opinion that Texas could impose reasonable restrictions on physical touch to "prevent[ ] interference with the IV lines" by "allow[ing] touch on a part of the body away from IV lines, such as a prisoner's lower leg.

### III. Protective Order Standard

As a general rule, the producing party must show "good cause" for the issuance of any protective order. *See, e.g.*, *Shingara v. Skiles*, 420 F.3d 301, 305–06 (3rd Cir. 2005). Undue burden and annoyance are sufficient reasons to justify a protective order. *See* Fed. R. Civ. Pro. 26(c)(1). Plaintiff Gonzales seeks discovery that is unnecessary and burdensome because it will require the Director of TDCJ Correctional Institutions Division, a Senior Warden, an officer whose identity is confidential, and a TDCJ-designated 30(b)(6) deponent to prepare for and attend depositions. "It is a settled rule in this circuit that "exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." *In re Office of Inspector General*, 933 F.2d 276, 278 (5th Cir. 1991) (per curiam). "High ranking government officials have greater duties and time constraints than other witnesses." *In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995) (quoting *In re United States*, 985 F.2d 510, 512 (11th Cir.) (per curiam)), cert. denied, 510 U.S. 989 (1993). "[T]he Supreme Court has indicated that the practice of calling high officials as witnesses should be discouraged." *Id.* (citing *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999 (1941)).

Here, because the discovery is unnecessary as discussed below, any amount of burden is undue. Moreover, Plaintiff cannot meet the required showing of "exceptional circumstances" to depose Director Lumpkin, Warden Crowley, and another high-ranking 30(b)(6) officer of TDCJ.

### IV. Additional Discovery is Not Necessary and is Overly Burdensome

The sole remaining issue in this case is whether an accommodation that allows Gonzales's spiritual advisor to touch his chest and pray aloud, but restricts her from holding Gonzales's hand, during the execution, substantially burdens Gonzales's religious exercise; and if it does, whether the minor restriction is the the least restrictive alternative. The Supreme Court has already resolved the question of whether the asserted interests are compelling.

In evaluating TDCJ's execution chamber restrictions, the Supreme Court concluded that preventing interference with the IV lines is a compelling interest. *Ramirez*, 142 S.Ct. at 1281 ("We think that preventing accidental interference with the prison's IV lines is a compelling governmental interest."); *Id.* at 1280 ("We agree that prisons have compelling interests in both protecting those attending an execution and preventing them from interfering with it."); *see also id.* at 1281 ("Texas could require that the pastor undergo training so that he understands the importance of staying away from IV lines and taking whatever other precautions are necessary to avoid problems in the chamber."). The Supreme Court also concluded that keeping the view of the prisoner and the IV lines unobstructed is a compelling interest. *Id.*

The Supreme Court directed that TDCJ could apply restrictions to protect the IV

lines and to maintain unobstructed views, specifically proposing that "Texas could allow touch on a part of the body away from IV lines, such as a prisoner's lower leg." *Id.* at 1281; TDCJ has accommodated Gonzales here in an even less restrictive manner than the Supreme Court suggested would be permissible under RLUIPA by allowing Gonzales's spiritual advisor to stand at the corner of the gurney above Gonzales's head and right shoulder and place a hand on his chest during the execution.

No further discovery is necessary in this case for Plaintiff to litigate whether the asserted interests here are compelling, because the Supreme Court has resolved that element. *Ramirez*, 142 S. Ct. 1280–81. Gonzales has been provided with photographs of the gurney and execution chamber taken from multiple angles, a video tour of the execution chamber, and deposition testimony from numerous TDCJ officials regarding TDCJ's security interests and least restrictive means related to restrictions in the execution chamber. The burden of additional discovery, particularly the depositions of high-ranking executive officials in TDCJ, is unnecessary to develop the record on the extremely narrow remaining issue in this case.

The positioning of the spiritual advisor, the gurney, the IV lines and the witness viewing rooms in the chamber are all that the Court and Gonzales require to evaluate the feasibility of Gonzales's sole unfulfilled request. To maintain a hand on his chest and also hold Gonzales's hand would require the spiritual advisor to contort her body in an unfeasible manner or to stand in a location that would be directly adjacent to the IV lines and obstruct the view of witnesses in the witness viewing rooms. As reflected in the photographs and video already produced to Gonzales, the prisoner's hands are secured by straps on the gurney. The arms are held out away from the body at an angle of approximately 30 degrees, , with

the hands resting down towards the prisoner's waist. An IV line is inserted in each arm, with medical tape used to hold the IV line in place. There will also be gauze used to cover both hands. The spiritual advisor will stand at the corner of the gurney above Gonzales's head and right shoulder, so she does not obstruct the view from the drug room or the witness viewing rooms. She will be able to reach over from above Gonzales' head across the top of his shoulder to lay a hand on his chest during the execution. Even if it were permitted, it is unlikely the spiritual advisor would be tall enough or have a sufficient wing span to allow her to reach Gonzales's right hand while standing above his head and right shoulder while also touching his chest. To attempt to reach Gonzales's hand, she would have to lean over Gonzales's right shoulder, while touching his chest with her left hand, and reach down his right arm with her right hand past where the IV lines will be located before even reaching his right hand, which will be covered with gauze. Doing so would result in the spiritual advisor's arm resting on or hovering directly over the IV line in Gonzales's right arm. The position would cause the spiritual advisor to directly touch the IV line and obstruct the IV line from the drug team's view, while also obstructing the view of the witnesses in the witness viewing rooms. Even with no intent, brushing against the IV lines causes a high risk that the IV lines will be jostled out of the vein. The IV line does not have to be pulled out of the arm for it to be moved out of the vein, in which case it would not deliver fluid directly into the blood stream. The Supreme Court has confirmed that preventing interference with the IV lines is a compelling interest and that Texas could impose reasonable restrictions to prevent such interference. *Ramirez*, 142 S. Ct. at 1280-81.

If Plaintiff disagrees and intends to respond in opposition regarding the unfeasibility

7

of his remaining request, Plaintiff has already been provided with records and discovery responses relevant to this issue. Additional depositions would do no more than duplicate the existing testimony of TDCJ officials explaining the security interests in protecting the IV lines and the importance of leaving the drug team's view and the view of witnesses in the witness viewing rooms unobstructed. For example, the following documents reflect testimony by TDCJ officials regarding TDCJ's compelling interests in security in the execution chamber: Deposition of Billy Hirsch–former Deputy Director of the TDCJ Correctional Institutions Division, Deposition of Lorie Davis—former Director of the TDCJ Correctional Institutions Division; Deposition of Timothy Jones—former TDCJ Director of Chaplaincy, Deposition of Carter–TDCJ Regional Director for the Rehabilitation Program Division, Deposition of Steve Martin—Plaintiff Ruben Gutierrez's security expert.

Employing the RLUIPA analysis and evaluating the least restrictive means of accommodating Gonzales while addressing the compelling security interests has resulted in an accommodation that substantially satisfies Gonzales's religious requests. Plaintiff may utilize the photographs and video of the execution chamber to contest that his requested relief would place his spiritual advisor directly in contact with the IV lines and in a position that would obstruct the view of the IV lines and witnesses. The Supreme Court's *Ramirez* opinion forecloses any argument that protecting the IV lines from intentional or unintentional interference or maintaining an unobstructed view of the IV lines is a compelling penological interest. The *Ramirez* opinion further forecloses any question that limiting the areas of the body in which a spiritual advisor may physically touch an inmate to those areas away from the IV lines, such as the lower leg, is a least restrictive means of

satisfying this compelling interest. *Id.*

## V. Alternatively, a Protective Order Limiting the Scope is Appropriate.

Should the Court determine that additional discovery is necessary, Defendants seek a protective order limiting the scope of discovery in light of the narrow remaining claim. Defendants further seek a protective order limiting the scope of discovery and to protect information related to the confidential drug team members and enforcing the deliberative process privilege.

### A. Limit Discovery to the Narrow Remaining Claim

Because Defendants relevance objections would do nothing to avoid having to answer the discovery, a protective order limiting discovery to the narrow issue in this case is necessary to protect Defendants from undue burden. The sole remaining issue to be decided can be summarized as (1) whether Gonzales' religious exercise is substantially burdened by TDCJ's decision to allow his spiritual advisor to lay a hand over his chest and pray aloud but not to contemporaneously hold his hand when he is secured to the gurney; (2) whether the requested relief is physical feasible in light of the physical position of the gurney, IV lines, and witness viewing rooms in the execution chamber; and (3) whether TDCJ's restriction to prevent contact with and obstruction of the IV line is the least restrictive means. As previously discussed, whether the asserted interests are compelling has already been resolved by the Supreme Court in *Ramirez*. *Id.* If additional discovery is permitted, it should be limited to these three narrow issues.

### B. Information Related to the Confidential Drug Team.

Plaintiff's written discovery requests sought information related to the confidential

drug team and its members, including information that could be used in an attempt to discover their identities. Information that could reveal the identity of the members of the confidential drug team is statutorily confidential and the disclosure of which would significantly risk the security of the execution process and those who are involved in carrying out the State's death penalty. The identity and any information that could be used to identify persons who are involved in administering the lethal injection is confidential under Tex. Gov't Code 552.1081 and Tex. Code of Crim. Pro. 43.14. *See also TDCJ v. Levin*, 572 S.W.3d 671 (Tex. 2019).

Opponents of the State's death penalty statute have for years attempted to disrupt the execution process by obtaining information about the people involved in administering the execution drugs. It is essential that information surrounding the identities of those individuals be kept confidential. The security risk that would be associated with disclosing such information, even under the promise of a litigation protective order, would far outweigh the probative value, if any, of this information. None of the members of the drug team are present inside the execution chamber immediately before, during, or after an execution is carried out. The confidential members of the drug team are not present in the execution chamber at any time when the inmate's chosen spiritual advisor is in the execution chamber. Accordingly, to the extent Plaintiff believes their credentials are relevant because they are persons that could jeopardize the security of an execution, they are not in the room and therefore are not in a position to threaten the security of an execution as it is carried out.

No member of the drug team is present in the execution chamber when the inmate is escorted into the execution chamber and secured to the gurney. The drug team is located

inside the drug room during an execution, which is a separate room from the execution chamber. The drug team remains in the drug room until after the inmate has been declared deceased.

The TDCJ Execution Policy delineates the minimum qualifications, licensing, and training for members of the drug team. Specific information about the members is not probative and would constitute undue burden by risking the otherwise carefully maintained confidentiality of the members. Furthermore, because the role of the drug team members is to help carry out the execution, the identity of the drug team members is not relevant and would have no probative value in relation to Gonzales's request that his spiritual advisor be simultaneously allowed to touch his chest and hold his hand during his execution. And revealing their identities would be extremely prejudicial to Defendants as well as to those individuals.

## C. Information Protected by the Deliberative Process Privilege.

The deliberative process privilege protects from disclosure information "reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The privilege applies to information that is both pre-decisional and deliberative. *Id.* The reasoning behind the deliberative process privilege is "that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government[.]" *Id.*

The deliberative process privilege protects from Gonzales's discovery of "why" TDCJ decision-makers chose one policy over another. Gonzales is not entitled to the content of conversations between the Defendants when creating policy nor information as to why a particular policy was or was not promulgated. *Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 612 (N.D. Cal. 2020) (stating the deliberative process privilege protects the "mental processes of decision-makers*."); see also Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1118 (9th Cir. 1988) (emphasis in the original) (holding that the deliberative process privilege "was intended to protect not simply deliberative material, but also the deliberative process of agencies.").

Any ruling that does not offer the Defendants the protection from questions or written discovery requests that would infringe on their deliberative process privilege will have debilitating effects. After all, the sole purpose of the deliberative process privilege is to fulfill "the obvious realization that officials will not communicate candidly among themselves." *Klamath*, 532 U.S. at 8. Were Defendants required to divulge candid communications to Plaintiff, "the quality of [policy] decisions," would undoubtedly decline where there was no longer any "protecti[on of] open and frank discussion among those who make them within the Government." *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). The Defendants would be effectively deterred from engaging in internal deliberations with one another to advocate for or against future policies or procedures.

## VI. Gonzales Will Not be Prejudiced by a Protective Order.

No prejudice will come to Gonzales by way of a grant of this motion. Gonzales has been provided with the relevant records and deposition testimony necessary to litigate the

narrow issue remaining in this case. Defendants will move for summary judgment based on mootness as to Gonzales's request for audible prayer and physical touch by the laying of a hand on his chest during the execution chamber. Defendants will further move for summary judgment on the merits of Gonzales's request that his spiritual advisor hold his hand with her right hand based on the unfeasibility of the spiritual advisor being able to reach the two contact points at the same time, and because the positioning would cause her to make direct contact with the IV line and obstruct the view of the IV lines from the drug team and the view of witnesses in the witness viewing rooms. Gonzales' requested discovery will not further this litigation.

## Conclusion and Prayer

Defendants respectfully move to quash the four noticed depositions pending resolution of this motion for protective order. Further, Defendants seek entry of a protective order staying all additional discovery, because Plaintiff Gonzales has been provided with the relevant discovery, including photographs, videos and depositions, that will enable him to litigate the narrow remaining issue in this case. Alternatively, Defendants seek entry of a protective order limiting the scope of discovery and enforcing confidentiality and the deliberative process privilege.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General
Attorney-in-Charge
State Bar No. 24079074
Southern District No. 1563191
Leah.Oleary@oag.texas.gov

Law Enforcement Defense Division
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9918

**ATTORNEYS FOR DEFENDANTS
COLLIER, LUMPKIN, AND CROWLEY**

**CERTIFICATE OF CONFERENCE**

I, Leah O'Leary, certify that I conferred on multiple occasions, by phone and by email with counsel for Plaintiff Gonzales regarding the accommodations that have been approved for Mr. Gonzales' spiritual advisor and the limitations and reasons that the spiritual advisor will not be able to also hold Gonzales's hand when he is secured to the gurney. Undersigned has also conferred with counsel for Gonzales regarding Defendants' position that no additional discovery is necessary to resolve the narrow remaining issue. Plaintiff is opposed to this motion to quash and motion for protective order.

*/s/ Leah O'Leary*
Leah O'Leary
Assistant Attorney General

**CERTIFICATE OF SERVICE AND FILING**

I hereby certify that on May 10, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court for the Southern District of Texas using the electronic case-filing (ECF) system of the Court, which will serve all counsel of record and registered users in this case.

*/s/ Leah O'Leary*
Leah O'Leary
Assistant Attorney General