IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAMIRO FELIX GONZALES, <br> *Plaintiff*, <br><br> v. <br><br> BRYAN COLLIER, Executive Director, Texas Department of Criminal Justice; <br><br> BOBBY LUMPKIN, Director, Texas Department of Criminal Justice, Correctional Institutions Division; <br><br> *and* <br><br> DENNIS CROWLEY, Warden, Texas Department of Criminal Justice, Huntsville Unit, <br> *Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § | Civil Case No. 4:21-cv-00828 <br><br><br><br> ***EXECUTION SCHEDULED FOR JULY 13, 2022*** |

**PLAINTIFF'S OPPOSED MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Ramiro Felix Gonzales is set to be executed on July 13, 2022. In accordance with his beliefs as a Messianic Christian, Mr. Gonzales has asked his spiritual advisor to hold his hand and place her other hand on his heart at the time that he is executed. The Texas Department of Criminal Justice (TDCJ) has prohibited her from doing so; they have asserted that they will permit her to place a hand on Mr. Gonzales's chest, but she is prohibited from

holding his hand during the execution. Defendants claim that allowing her to hold Mr. Gonzales's hand would place her too close to the IV lines and may obstruct the view of witnesses and/or participants.

This refusal substantially burdens Mr. Gonzales's sincere religious exercise. Because there is no genuine dispute of material fact as to whether this restriction constitutes a substantial burden on Mr. Gonzales's religious exercise, he respectfully requests that this Court grant summary judgment as to the substantial-burden portion of his RLUIPA claim.

## STATEMENT OF FACTS

Mr. Gonzales is a prisoner on death row at TDCJ. Mr. Gonzales identifies as a Messianic Christian. Dkt 1-1 at 15. He has completed various religious courses and certifications in his time at TDCJ, including correspondence studies at Shalom Bible College. *Id.* Defendants are sued in their official capacities as the relevant officials of TDCJ.

On January 15, 2021, three months before his then-scheduled execution date, Mr. Gonzales submitted a request that his spiritual advisor, Reverend Bri-anne Swan, attend his execution. Dkt 1-1 at 15–16. At that time, TDCJ prohibited all spiritual advisors from being in the execution chamber. Dkt 1 at 7. In his request, Mr. Gonzales asked that Reverend Swan be allowed to hold his hand and place her other hand over his heart while he is being executed. *Id.* at 6; Dkt 1-1 at 15. Mr. Gonzales has consistently stated that this religious

request is "vitally important to me at this time as I am making my spiritual transition into the Paradise of God." *See* Dkt 1-1 at 15. It will "serve as a sense of tranquility, [and a] representation of the presence of Christ . . . in physical form." *Id.*

Defendants initially denied Mr. Gonzales's request. Dkt 1-1 at 29. After the Supreme Court issued its decision in *Ramirez v. Collier*, 142 S. Ct. 1264 (2022), Defendants revised their decision and state that they will allow Reverend Swan to place her hand on Mr. Gonzales's chest during his execution. Dkt 28 at 3–4. Reverend Swan is still prohibited from holding Mr. Gonzales's hand in the execution chamber. *Id.*

## STATEMENT OF ISSUES

1) Should summary judgment be granted on the issue of whether TDCJ's restrictions in the execution chamber substantially burden Mr. Gonzales's sincere religious exercise?

## STANDARD OF REVIEW AND LEGAL AUTHORITIES

### A. Standard of review for motions for summary judgment.

Rule 56(a) of the Federal Rules of Civil Procedure requires that courts grant summary judgment if a movant can show that (1) there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law. A court may grant summary judgment on either the whole claim or on part of a claim. *Id.* The movant may meet his summary judgment burden

by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

A fact is material if it can affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The mere existence of some factual dispute alone is not enough to defeat a motion for summary judgment. *Id.* at 247–48. The substantive law—in this case, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA)—identifies which facts are material in a case. *Id.*

Moreover, any dispute as to a material fact must be genuine. A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.* This requires that the nonmoving party bring forward specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Id.* at 586. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995). And the movant "is entitled to judgment as a matter of law when the nonmoving party has failed to make a sufficient

showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

**B.     Standard of review under RLUIPA.**

RLUIPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C. 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. RLUIPA plaintiffs bear the initial burden of proving that: (1) their religious exercise is implicated; (2) their request is sincerely based on a religious belief; and (3) the burden on their religious exercise is substantial. *Ramirez*, 142 S. Ct. at 1277. RLUIPA protects any exercise of religion regardless of whether that exercise is compelled by or central to a system of religious belief. 42 U.S.C. § 2000cc-5(7)(A).

The sincerity of a plaintiff's religious beliefs "must be handled with a light touch, or 'judicial shyness.'" *Moussazadeh v. TDCJ*, 703 F.3d 781, 792 (5th Cir. 2012) (quoting *Betenbaugh v. Needville Independent School District,* 611 F.3d 248, 262 (5th Cir. 2010)). It is "generally presumed or easily established."

*Id.* at 791. When assessing sincerity, "[t]he narrow question is whether the plaintiff personally believes that the desired religious practices are deeply important." *Atomanczyk v. TDCJ*, No. 4:17-CV-00719, 2021 WL 2915030, at *11 (S.D. Tex. July 12, 2021).

A prison system creates a substantial burden on a prisoner's religious exercise if it pressures the prisoner "to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 569–70 (5th Cir. 2004). The effect of the prison's action "is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit and, on the other hand, following his religious beliefs." *Id.* Importantly, the substantial-burden test asks only whether the government has substantially burdened religious exercise, "not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015).

## ARGUMENT

Defendants' restrictions against clergy handholding in the execution chamber will substantially burden Mr. Gonzales's sincere religious exercise. Defendants cannot present any material evidence to show that prohibiting clergy handholding at the time of execution does not substantially burden Mr. Gonzales's sincere religious exercise. Defendants therefore have no genuine

dispute as to the material facts of the substantial-burden inquiry. Mr. Gonzales is entitled to judgment as a matter of law with respect to the substantial burden aspect of his RLUIPA claim.

### A. Mr. Gonzales's request is based on a sincerely held religious belief.

Mr. Gonzales plainly meets the low threshold required to establish the sincerity of his beliefs. *See Moussazadeh*, 703 F.3d at 792. He is a devoted practitioner of his faith. Dkt 1-1 at 15. Defendants have produced no summary judgment evidence that indicates Mr. Gonzales's request is insincere.

Mr. Gonzales's request is important to his practice of religion. *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 333 (5th Cir. 2009) ("No summary judgement [sic] evidence contradicts Sossamon's claim that these religious practices are important to *his* practice of Christianity.") (emphasis in original); *Atomanczyk*, 2021 WL 2915030, at *11. The Bible provides a strong basis for Mr. Gonzales's beliefs. In recounting God's plan, the prophet Isaiah declares, "I am the Lord your God who takes hold of your right hand and says to you, Do not fear; I will help you." Isaiah 41:13. According to the Psalms, God will "hold me by my right hand" and "guide me with your counsel." Psalms 73:23–24. And Jesus often held hands with the subjects of his miracles. Matthew 8:15 ("When Jesus came into Peter's house, he saw Peter's mother-in-law lying in bed with a fever. He touched her hand and the fever left her,

and she got up and began to wait on him."); Luke 8:54–55 (When raising Jairus's daughter from the dead, Jesus "took her by the hand and said 'My child, get up!' Her spirit returned and at once she stood up.").

Mr. Gonzales explained the importance of his beliefs to Defendants in his grievances. Dkt 1-1 at 15–16. Importantly, he made this request nearly a year and a half ago, at a point when Defendants' policies prohibited even the mere presence of his spiritual advisor in the chamber. Dkt 1 at 7. His request has never varied over the course of this litigation. *See Ramirez*, 142 S. Ct. at 1278 (noting that "evolving litigation positions" may indicate a lack of sincerity). Because no genuine dispute of material fact exists as to the sincerity of Mr. Gonzales's religious beliefs, summary judgment should be granted on this issue.

### B. TDCJ is substantially burdening Mr. Gonzales's religious exercise.

Likewise, Defendants' actions substantially burden Mr. Gonzales's religious exercise. There is no doubt that the requested contact during his execution falls under RLUIPA's broad umbrella of religious exercise. *See Ramirez*, 142 S. Ct. at 1280–81. Under RLUIPA, facts are material to the substantial burden inquiry if they tend to show whether Mr. Gonzales has been pressured to significantly modify or violate his religious beliefs. *See Adkins*, 393 F.3d at 569–70. Facts relating to Defendants' accommodations outside of

clergy handholding are not material because the substantial-burden test does not consider whether Mr. Gonzales is able to engage in other forms of religious exercise. *See Holt*, 574 U.S. at 361–62.

Mr. Gonzales has consistently stated that holding his pastor's hand at the time of death is important to his practice of religion. Dkt 1-1 at 15–16. Mr. Gonzales's beliefs regarding clergy handholding at the time of execution are not unique. There is a robust history of instances where clergy have held hands with and even embraced prisoners during or directly before their executions as part of their ministry. Ex. 1, Brief for the Beckett Fund as Amicus Curiae at 9, 13, 16–19, *Ramirez v. Collier*, No. 21-5592. As outlined in that brief, this has included:

- McKenzie 176-182; *Execution of Colonel Despard*, The Republican, Apr. 11, 1803 (among six prisoners, "Macnamara being a Roman Catholic, was attended by a Roman Catholic Priest," and on the scaffold, "Macnamara prayed earnestly with the Clergyman of his own persuasion," before clergy "shook hands with each of them").

- Associated Press, *Man executed in Alabama: "I hope this brings closure"*, CBS News (Jan. 22, 2016), https://perma.cc/Z24D-ZC5X ("A prison chaplain held Brooks' hand and appeared to pray with him as the first drug, a sedative, began flowing.").

- *The Gallows: Execution of a Philadelphia Murderer*, St. Louis Daily Globe-Democrat, June 13, 1877 (chaplain "partially embraced the doomed man" on "the scaffold," "grasped his hand warmly, and said, 'Good-by, George; you are going home to God'").

- *See, e.g.*, Waltz, *Death Walk Chaplain* (describing how chaplain in 1990 execution "put his hand on the back of [the prisoner's] head"

and held his hand while speaking to him, but pulled back immediately before electricity was applied).

- *Ray* v. *Commissioner*, 915 F.3d 689, 696-697 (11th Cir.) ("Chaplain may pray with and touch the inmate's hand as a lethal cocktail of drugs is administered"), *stay vacated on other grounds*, 139 S.Ct. 661, 661 (2019).

- Johnson, *Inmate in 2005 killing* ("Once the injection was begun, Holman chaplain Chris Summers walked to Lackey's side and held his hand.").

- Alabama agreed to allow audible prayer, handholding, and anointing with oil by an outside spiritual adviser in the upcoming execution of Willie Smith, the respondent in *Dunn* v. *Smith*. See Kim Chandler, *Alabama: Pastor can hold inmate's hand during execution*, Associated Press (Sept. 9, 2021), https://bit.ly/3uhJ8IN.

- *See* Dennis Shere, *Warden saw only one answer for troubled La. Prison: Christ*, Baptist Press (Jan. 3, 2008), https://perma.cc/PRA5-5YTL (Angola Warden Burl Cain "held [prisoner's] hand and told him to get ready to see Jesus' face" "as he lay strapped down on the execution gurney").

*Id.* Defendants' decision withholds from Mr. Gonzales a religious exercise granted to numerous condemned individuals in varying jurisdictions.

Barring Mr. Gonzales's pastor from holding his hand during the execution is a significant modification of religious behavior that forces Mr. Gonzales to violate his religious beliefs. Mr. Gonzales has explained the importance of this act, which is "vitally important to me at this time as I am making my spiritual transition into the Paradise of God." *See* Dkt 1-1 at 15. It will "serve as a sense of tranquility, [and a] representation of the presence of Christ . . . in physical form." *Id.*

Defendants are unable to bring forward any specific facts showing that there is a genuine issue for trial with respect to the substantial-burden inquiry. As a result, no reasonable jury could decide that Defendants' restrictions against clergy handholding do not constitute a substantial burden on Mr. Gonzales's religious exercise. Mr. Gonzales is entitled to judgment as a matter of law on the substantial-burden portion of his RLUIPA claim.

## Conclusion

The facts in the record show that there is no genuine dispute of material fact as to whether TDCJ's restrictions in the execution chamber substantially burden Mr. Gonzales's religious practice. Mr. Gonzales respectfully requests that this Court grant Plaintiff's Motion for Partial Summary Judgment.

Dated this 10th day of June, 2022.

Respectfully submitted,

JASON D. HAWKINS
Federal Public Defender

*/s/ Jeremy Schepers*
Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit

Michael Kawi
Assistant Federal Public Defender

Victoria Inojosa
Research and Writing Attorney

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
(214) 767-2746
jeremy_schepers@fd.org


*/s/ Steven T. Collis*
Steven T. Collis (TX 24122632)
Director, Law & Religion Clinic
University of Texas School of Law
727 E. Dean Keaton St.
Austin, TX 78705
(512) 475-9090
steven.collis@law.utexas.edu

COUNSEL FOR PLAINTIFF GONZALES

# CERTIFICATE OF WORD COUNT

Counsel certifies that the body of this motion contains 2390 words, according to his word-processing program.

*/s/ Jeremy Schepers*
Jeremy Schepers

# CERTIFICATE OF CONFERENCE

Counsel certifies that he conferred with opposing counsel, Leah O'Leary, and Defendants are opposed to the relief requested in this motion.

*/s/ Jeremy Schepers*
Jeremy Schepers

# CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2022, I sent a true and correct copy of the foregoing document to Leah O'Leary, counsel for the Defendants, at leah.oleary@oag.texas.gov.

*/s/ Jeremy Schepers*
Jeremy Schepers