IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAMIRO FELIX GONZALES, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-00828 |
| | § | |
| BRYAN COLLIER, Executive Director | § | |
| of the Texas Department of Criminal | § | |
| Justice, BOBBY LUMPKIN, Director | § | |
| of the Texas Department of Criminal | § | |
| Justice–Correctional Institutions | § | |
| Division, and DENNIS CROWLEY, | § | |
| Warden of the Huntsville Unit, | § | |
| *Defendants.* | § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# Exhibit E

Relevant Portion of Affidavit of Lorie Davis,

Former Director of Texas Department of Criminal Justice-Correctional Institutions Division

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION

| | |
|---|---|
| RUBEN GUTIERREZ, § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. 1:19-CV-185 |
| § | *DEATH PENALTY CASE* |
| LUIS V. SAENZ, ET AL., § | |
| *Defendants.* § | |

## DECLARATION OF LORIE DAVIS

My name is Lorie Davis. I am over 21 years of age, of sound mind, capable of making this declaration, and personally acquainted with the facts as stated herein.

I am employed by the Texas Department of Criminal Justice ("TDCJ") as the Correctional Institutions Division ("CID") Director. I started as a correctional officer at the Ellis Unit in 1988 and worked my way up to the highest-ranking CID official. During this time, I have served as: (1) senior warden at eleven CID units, (2) the CID Region III Director, (3) Director of Correctional Training and Staff Development, (4) Deputy Director of CID Management Operations, and (5) Deputy Director of CID Support Operations. I have extensive knowledge of the TDCJ prison system and the constant need to be vigilant against both internal and external threats to security.

It is my understanding that I have been named as a defendant in the above titled lawsuit in my capacity as the CID Director. I have been asked to provide this affidavit describing the relevant current execution procedures.

Texas has executed 33 offenders since I became the CID Director. I am familiar with every detail that takes place on the day of an execution, and I am required by state law to supervise the execution. The general process currently used by the TDCJ has been in place since 1982, and a successful execution depends on the TDCJ maintaining control over every aspect of the process.





There have been, however, incidents of disruption and aggression by the condemned offender:

On the evening of the execution of Ponchai Wilkerson, Mr. Wilkerson became assaultive and aggressive as he was being escorted from the pre-execution holding area into the execution chamber. A struggle ensued, and Mr. Wilkerson had to be physically restrained on the gurney. Once he was restrained on the gurney in the execution chamber and at the time he was asked if he wanted to give a last statement, Mr. Wilkerson spit a handcuff key out of his mouth.

While escorting condemned offender Erick Davila to the execution chamber on the evening of his scheduled execution, Mr. Davila assaulted a TDCJ security officer by striking him in the face. A struggle ensued, and Mr. Davila had to be physically restrained and placed on the gurney.

On the evening of the execution of Douglas Feldman, Mr. Feldman refused to walk into the execution chamber. Mr. Feldman had to be secured to a mobile gurney and was carried into the execution chamber.

During the execution of Juan Castillo, Mr. Castillo refused to walk from the pre-execution holding area to the execution chamber and had to be forcibly escorted to the execution chamber and restrained on the gurney.

On the evening of the execution of Christopher Young, Mr. Young advised the warden that he had been planning to fight TDCJ staff, but because he had been treated well by all involved in the process, he had a change of heart.

There have also been incidents of disruption by non-TDCJ employees in the condemned offender's witness room:

During the execution of Billie Coble, Mr. Coble's adult son created a disturbance while in the condemned offender's witness room. He began beating on the glass and yelling loudly. When staff in the witness room attempted to calm him, a physical altercation ensued involving a TDCJ security officer and an employee of

the Office of the Inspector General. During the altercation, two other Coble family members in the witness room had to be instructed to stop yelling and to move away from the incident. Mr. Coble's son and grandson were arrested as a result of the incident and transported to the Walker County Sheriff's Office.

During the execution of Gustavo Garcia, a member of the media who was present in the condemned offender's witness room fainted. She had to be taken out of the witness room.

During the execution of Licho Escamilla, Mr. Escamilla's sister had to be removed from the condemned offender's witness room because she was beating on the glass window.

Each of these incidents exemplifies the reality that an individual's behavior and reactions during the execution process cannot be anticipated. TDCJ staff were able to quickly react to these situations but, if these disruptions were caused by or occurred while a non-TDCJ employee was present inside the execution chamber, the consequences could have been severe.



I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 19, 2020.

_____
Lorie Davis
Director
Correctional Institutions Division
Texas Department of Criminal Justice