IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAMIRO FELIX GONZALES, *Plaintiff*, | § § § | |
| v. | § § § | |
| BRYAN COLLIER, Executive Director, Texas Department of Criminal Justice, Huntsville, Texas; | § § § § § § § | Civil Case No. 4:21-cv-828 |
| BOBBY LUMPKIN, Director, Texas Department of Criminal Justice, Correctional Institutions Division, Huntsville, Texas; | § § § § § § | ***EXECUTION SCHEDULED FOR JULY 13, 2022*** |
| *and* | § § | |
| DENNIS CROWLEY, Warden, Texas Department of Criminal Justice, Huntsville Unit, Huntsville, Texas, *Defendants*. | § § § § § § | |

## PLAINTIFF'S MEMORANDUM OF LAW

Plaintiff Ramiro Felix Gonzales respectfully submits this Memorandum of Law in accordance with this Court's procedures. Mr. Gonzales submits this document as the relevant legal standards applicable to his claims for relief. Because he will also be filing Proposed Findings of Fact and Conclusions of Law, he limits this document to legal standards and will apply these standards

1

to the relevant facts in his Conclusions of Law. Due to late-breaking factual and legal developments, he requests permission to supplement this document after trial occurs.

I. **STANDARD OF REVIEW FOR MOOTNESS**

A claim is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks and citation omitted). A defendant claiming mootness must show that the allegedly wrongful behavior could not reasonably be expected to recur. *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

A federal court may still rule on the legality of a defendant's practice even if the defendant has voluntarily ceased the challenged practice. *Friends of the Earth*, 528 U.S. at 189 (internal citations omitted). This is because the defendant "is free to return to his old ways." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953). The court must determine whether the defendants' actions actually extinguish the controversy or are mere litigation posturing. *Moore v. Brown*, 868 F.3d 398, 407 (5th Cir. 2017).

## II. STANDARD OF REVIEW UNDER RLUIPA

RLUIPA states that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C. 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. RLUIPA plaintiffs bear the initial burden of proving that: (1) their religious exercise is implicated; (2) their request is sincerely based on a religious belief; and (3) the burden on their religious exercise is substantial. *Ramirez*, 142 S. Ct. at 1277. RLUIPA protects *any* exercise of religion regardless of whether that exercise is compelled by or central to a system of religious belief. 42 U.S.C. § 2000cc-5(7)(A).

When assessing sincerity, "[t]he narrow question is whether the plaintiff personally believes that the desired religious practices are deeply important." *Atomanczyk v. TDCJ*, No. 4:17-CV-00719, 2021 WL 2915030, at *11 (S.D. Tex. July 12, 2021). Prison officials "are not arbiters of the measure of religious devotion that prisoners may enjoy or the discrete way that they may practice their religion." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 333 (5th Cir. 2009). A prison system substantially burdens a prisoner's religious

3

exercise if it pressures the prisoner to significantly modify his religious behavior and significantly violate his religious beliefs. *Adkins v. Kaspar*, 393 F.3d 559, 569–70 (5th Cir. 2004). The effect of the prison's action is significant when it either (1) influences or forces the prisoner to act in a way that violates his religious beliefs or (2) forces the prisoner to choose between, on one hand, enjoying some generally available non-trivial benefit and, on the other hand, following his religious beliefs. *Id.* Prisons substantially burden religious exercise when they limit or prevent that exercise, even if they do not coerce behavior or force prisoners to choose between their religion and other benefits. *See Ramirez*, 142 S. Ct at 1278; *DeMarco v. Davis*, 914 F.3d 383, 389–90 (5th Cir. 2019). The substantial-burden test asks only whether the government has substantially burdened religious exercise, "not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015).

Once a prisoner has shown that a prison's policy substantially burdens his exercise of religion, the prison must show that its policy (1) furthers a compelling governmental interest and (2) is the least-restrictive means of furthering that interest. *Holt*, 574 U.S. at 362. The prison must show that applying its policies against this particular inmate serves its compelling interests. *Id.* at 362–63. Part of this analysis requires courts "to look at the marginal interest in enforcing the challenged government action in that

4

particular context." *Id.* at 363 (citing *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 726–27 (2014)) (internal quotation marks omitted). A prison cannot "rely on 'broadly formulated interests,' [instead] courts must "scrutinize[ ] the asserted harm of granting specific exemptions to particular religious claimants." *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1881 (2021) (quoting *Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418, 431 (2006)).

The least-restrictive-means standard "requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, 574 U.S. at 364 (citing *Hobby Lobby*, 573 U.S. at 728) (internal quotation marks and brackets omitted). "Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881. Speculative concerns raised by prisons fail to meet this demanding standard. *Ramirez*, 142 S. Ct at 1280.

Courts may not defer to a prison's unexplained statement that a religious accommodation is not feasible. *Ramirez*, 142 S. Ct. at 1279. Respect for the expertise of prison officials "does not justify the abdication of the responsibility, conferred by Congress, to apply RLUIPA's rigorous standard." *Holt*, 574 U.S. at 364.

5

### III. STANDARD OF REVIEW UNDER THE FIRST AMENDMENT

The First Amendment commands that "Congress shall make no law . . . prohibiting the free exercise of" religion. U.S. Const., amend. I. The Free Exercise Clause applies to state-government actions. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the protections of the Free Exercise Clause are incorporated by the Fourteenth Amendment against the States).

When considering laws or policies that inhibit the free exercise of religion, reviewing courts must first determine whether the law is neutral and generally applicable. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). If a prison's policy is *both* neutral and generally applicable, the policy is subject to the deferential *Turner* factors. *See generally Turner v. Safley*, 482 U.S. 78 (1987).

The creation "of a formal system of entirely discretionary exceptions" to a policy renders the policy not generally applicable. *Fulton*, 141 S. Ct. at 1878. A law or policy that is not both neutral and of general applicability is instead subject to strict scrutiny, meaning that it "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Church of the Lukumi Babalu Aye*, 508 U.S. at 531. If the government can achieve its interest without burdening religion, it must. *Id.* at 1881.

## IV. CONCLUSION

Mr. Gonzales respectfully submits this Memorandum of Law pursuant to this Court's procedures.

Dated this 29th day of June, 2022.

Respectfully submitted,

JASON D. HAWKINS
Federal Public Defender

*/s/ Jeremy Schepers*
Jeremy Schepers (TX 24084578)
Supervisor, Capital Habeas Unit

Michael Kawi
Assistant Federal Public Defender

Victoria Inojosa
Research and Writing Attorney

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
(214) 767-2746
jeremy_schepers@fd.org

*/s/ Steven T. Collis*
Steven T. Collis (TX 24122632)
Director, Law & Religion Clinic
University of Texas School of Law
727 E. Dean Keaton St.
Austin, TX 78705
(512) 475-9090
steven.collis@law.utexas.edu

COUNSEL FOR PLAINTIFF GONZALES

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2022, a true and correct copy of the foregoing document was filed in the CM/ECF system, which will serve Leah O'Leary, counsel for the Defendants, at leah.oleary@oag.texas.gov.

*/s/ Jeremy Schepers*
Jeremy Schepers
