UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAMIRO FELIX GONZALES, | § | CIVIL ACTION NO. |
| | § | 4:21-cv-00828 |
| Plaintiff, | § | |
| | § | |
| | § | JUDGE CHARLES |
| vs. | § | ESKRIDGE |
| | § | |
| | § | |
| BRYAN COLLIER *et al.*, | § | |
| Defendants. | § | |

**JOINT PRETRIAL ORDER**

## 1. Appearance of Counsel

For Plaintiff Ramiro Felix Gonzales:

> Jeremy Schepers
> Office of the Federal Public Defender
> Northern District of Texas
> 525 S. Griffin St., Ste. 629
> Dallas, TX 75202
> (214) 767-2746
> jeremy_schepers@fd.org
>
> Michael Kawi
> Office of the Federal Public Defender
> Northern District of Texas
> 525 S. Griffin St., Ste. 629
> Dallas, TX 75202
> (214) 767-2746
> Michael_kawi@fd.org
>
> Steven T. Collis
> University of Texas School of Law
> 727 E. Dean Keeton St.
> Austin, TX 78705
> (512) 475-9090
> steven.collis@law.utexas.edu

1

For Defendants Bryan Collier, Bobby Lumpkin, and Dennis Crowley:

> Leah O'Leary
> Assistant Attorney General
> Law Enforcement Defense Division
> Office of the Attorney General
> P.O. Box 12548, Capitol Station
> Austin, TX 78711-2548
> (512) 463-2080
> Leah.oleary@oag.texas.gov

> Jessica Weltge
> Assistant Attorney General
> Law Enforcement Defense Division
> Office of the Attorney General
> P.O. Box 12548, Capitol Station
> Austin, TX 78711-2548
> (512) 463-2080
> Jessica.Weltge@oag.texas.gov

## 2. Statement of the Case

Plaintiff Ramiro Gonzales is an inmate incarcerated in the Texas Department of Criminal Justice ("TDCJ"). He was sentenced to death for capital murder and is currently scheduled for execution on July 13, 2022. Mr. Gonzales has requested that his spiritual advisor, Reverend Bri-Anne Swan, be allowed to pray audibly, hold his hand, and place her other hand on his chest as he is being executed. Defendants assert that TDCJ officials approved Mr. Gonzales's request for his spiritual advisor to pray aloud during the execution process except for when the Warden or the Director of TDCJ Correctional Institutions Division are speaking and when Mr. Gonzales gives his last statement. Additionally, TDCJ officials will also permit Mr. Gonzales's spiritual advisor to stand at the end of the gurney above Mr. Gonzales's head and assert they will allow her to lay a hand on his chest over his heart. They have denied Mr. Gonzales's request that

2

Reverend Swan hold his hand while also placing a hand on his heart during his execution.

Mr. Gonzales asserts that Defendants are denying his religious rights under RLUIPA and the Free Exercise Clause of the First Amendment. Under RLUIPA, Mr. Gonzales argues that Defendants' conduct substantially burdens his religious exercise and that Defendants have not shown that their actions are the least restrictive means of furthering a compelling government interest. Similarly, Mr. Gonzales asserts that Defendants' conduct violates the Free Exercise Clause.

In contrast, Defendants argue that Mr. Gonzales cannot demonstrate a substantial burden on his religious exercise in light of the accommodations he will receive during his execution and the asserted spiritual significance of his spiritual advisor's actions. Defendants further assert there are no less restrictive alternatives that would further TDCJ's compelling penological interests. Similarly, Defendants assert the *Turner* deferential standard applies to Gonzales's Free Exercise claim because TDCJ's efforts to accommodate the requests of Mr. Gonzales and other inmates does not demonstrate hostility to religion. Defendants also argue that TDCJ's restriction on the position of Mr. Gonzales's spiritual advisor is reasonably related to legitimate penological interests.

### 3. Jurisdiction

This Court has federal-question jurisdiction under RLUIPA, 42 USC § 2000cc-1. It also has jurisdiction under 42 U.S.C. § 1983 and under 28 U.S.C. §§ 1343, 1651, 2201, and 2202.

### 4. Motions

The following motions are currently pending in this case:

- Plaintiff Ramiro Gonzales's Opposed Motion for Partial Summary Judgment, Dkt 40.

- Defendants' Opposed Motion for Summary Judgment, Dkt 42.

- Plaintiff's Unopposed Motion for Writ of Habeas Corpus ad Prosequendum, Dkt 45.

- Defendants' Motion to Strike and Limit the Expert Report and Supplementary Report of Plaintiff Ramiro Gonzales's expert witness, Dr. Mark Heath, Dkt 56.

- Plaintiff's Opposed Motion for Preliminary Injunction, Dkt 59.

- Defendants' Opposed Motion to Allow Defendant Lumpkin to Testify via Video, Dkt 61.

## 5. The parties' contentions

Plaintiff's Contentions

*Mootness.* Mr. Gonzales contends that his claim regarding Reverend Swan placing a hand on his chest is not moot because Defendants reserve the right to rescind this accommodation in the execution chamber.

*Substantial Burden.* Mr. Gonzales contends that Defendants' refusal to allow his religious exercise as requested in the execution chamber substantially burdens his religious practice. He seeks to practice his sincerely held religious beliefs in the execution chamber and has explained the religious significance of the specific request.

*Furtherance of a Compelling Governmental Interest.* Mr. Gonzales contends that material factual disputes remain regarding whether Defendants' asserted compelling interests are implicated based on his request. First, Defendants state that their refusal furthers their interest in providing the Huntsville

4

Unit Warden ("Warden") and the drug team with unobstructed views of the IV lines. But the evidence shows that both the Warden and the drug team can have an unobstructed view if his request is granted.

Second, Defendants state that their refusal furthers their interest in preventing needless suffering. Mr. Gonzales contends that there is no evidence that his request could lead to needless suffering.

Third, Defendants state that their refusal furthers their interest in ensuring the security of the IV lines. Mr. Gonzales contends that that his requested religious accommodation can safely occur and that, at a minimum, a material factual dispute exists as to whether this general compelling interest is implicated.

Finally, Defendants state that the ban furthers their interest in ensuring that witnesses and the media can observe the execution. Mr. Gonzales contends that this interest in not implicated because only one witness room would be obstructed, so all of the victim's witnesses and 2-3 media members would have an unobstructed view.

*Least Restrictive Means.* To the extent that any compelling interest is furthered by the Defendants' refusal, Mr. Gonzales contends that Defendants are not using the least restrictive means of furthering it.

Repositioning the Warden, placing Reverend Swan in a chair, or adding additional closed-circuit cameras or mirrors to the execution chamber would protect Defendants' interest in ensuring that the Warden can see the IV lines. Defendants have not considered other alternatives regarding the safety of the IV lines, including identifying veins in advance, consulting with the drug team or other medical expert, providing Reverend Swan a chair, and other possibilities suggested by Plaintiff's expert Dr. Heath. Providing closed-circuit images to the witness rooms would also

protect Defendants' interest in ensuring that witnesses and the media can observe the execution.

<u>Defendants' Contentions</u>

Defendants assert TDCJ officials have approved all but one aspect of Mr. Gonzales's religious requests relating to his spiritual advisor's conduct in the execution chamber. Gonzales cannot demonstrate a reasonable likelihood he will again be subjected to the wrongful conduct, and accordingly, the accommodated claims are moot. Defendants assert Gonzales cannot demonstrate that the remaining claim – his request that his spiritual advisor be permitted to hold his hand in the execution chamber – poses a substantial burden on his religious exercise. Gonzales will hear, see, and feel the intimately close physical presence of his spiritual advisor at the time of his death. Defendants argue that TDCJ's current restriction furthers compelling penological interests. Specifically, Defendants assert TDCJ has a compelling interest in ensuring 1) the Warden and drug team have unobstructed views; 2) the security of the IV lines; and 3) the victim's witnesses and media have an meaningful and unobstructed view of the prisoner. The repositioning of Mr. Gonzales's spiritual advisor, by having her sit in a chair instead of standing, would do nothing to mitigate the significant risk of the spiritual advisor being in immediate proximity to the IV line. Additionally, the Warden cannot "reposition himself" to see around the spiritual advisor without obstructing the views of the witnesses and media. Moreover, requiring the Warden to observe the IV lines and the prisoner through a camera or mirror is not a viable alternative.

## 6. Admissions of fact

Mr. Gonzales is a prisoner on death row at TDCJ.

Mr. Gonzales's execution date is July 13, 2022.

Mr. Gonzales identifies as a Messianic Christian.

On January 15, 2021, Mr. Gonzales submitted a request that his spiritual advisor, Reverend Bri-anne Swan, attend his execution. In his request, Mr. Gonzales asked that Reverend Swan be allowed to hold his hand, place her other hand over his heart, and audibly pray while he is being executed.

Reverend Swan has submitted to a background check, submitted her religious credentials for vetting, and attended the execution orientation required for approval to be present in the execution chamber. Accordingly, she has been officially approved by TDCJ officials to be present in the execution chamber.

Defendants will allow Mr. Gonzales's spiritual advisor, Reverend Swan, to pray aloud during the execution process except for when the Warden or the Director of TDCJ Correctional Institutions Division are speaking and when Mr. Gonzales gives his last statement.

Defendants assert they will allow Mr. Gonzales's spiritual advisor to stand at the end of the gurney above Mr. Gonzales's head and lay a hand on his chest over his heart.

Defendants have denied Mr. Gonzales's request that his spiritual advisor hold his hand while also placing a hand on his heart during his execution.

No assessment for identifying suitable veins is performed before the condemned is strapped to the gurney for his execution.

A total of four people are inside the execution chamber when the execution begins. These people are the condemned, the Warden, the spiritual advisor, and an OIG officer who will escort the spiritual advisor into the chamber and stand to the left of the spiritual advisor at the end of the gurney.

The CID Director and the Warden are exclusively responsible for determining whether to grant or deny a spiritual-advisor request.

Defendants have not consulted with an independent medical expert regarding specific contact requests.

## 7. Disputed facts

Various factual disputes exist in the parties' summary judgment motions and responses. The following is a non-exhaustive list of the broader points.

The parties dispute whether Mr. Gonzales's requested religious accommodation threatens the safety and security of the IV lines.

Defendants state that, even if other states allowed handholding in the execution chamber, Texas's execution chamber might not be able to allow the same due to its configuration. Mr. Gonzales disputes that to the extent that no facts have been marshalled in support of Defendants' assertion.

The parties dispute whether repositioning Reverend Swan to the side of the gurney will obstruct the views of the witnesses, media and the Warden, or the extent to which the views will be obstructed.

The parties dispute whether repositioning Mr. Gonzales's spiritual advisor in the execution chamber – by having her sit instead of stand – will obstruct the views of the Warden, witnesses, and members of the media.

The parties dispute whether it is a viable alternative to identify the veins that will be used in advance of Mr. Gonzales's execution.

## 8. Agreed applicable propositions of law

- RLUIPA

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution"—including state prisoners—"even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U. S. C. §2000cc–1(a).

A plaintiff bears the initial burden of proving that a prison policy "implicates his religious exercise." *Holt v. Hobbs*, 574 U. S. 352, 360 (2015).

Although RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," §2000cc–5(7)(A), a prisoner's requested accommodation "must be sincerely based on a religious belief and not some other motivation," *id.*, at 360–361. The burden on the prisoner's religious exercise must also be "substantial[ ]." *Id.*, at 361.

Once a plaintiff makes such a showing, the burden shifts and the government must "demonstrate[ ] that imposition of the burden on that person" is the least restrictive means of furthering a compelling governmental interest. §2000cc–1(a); *see also Holt*, 574 U.S. at 362.

## 9. Contested issues of law

a) Whether Defendants' current religious accommodations have mooted all of Mr. Gonzales's religious requests except for handholding;

b) Whether Mr. Gonzales has demonstrated that TDCJ's restriction substantially burdens his sincerely held religious exercise;

c) Whether the compelling governmental interests that Defendants have listed are implicated by Mr. Gonzales's religious request to have his spiritual advisor hold his hand while also placing a hand on his heart during his execution—and, by extension, whether denying Mr. Gonzales's handholding request furthers those asserted compelling penological interests;

d) Whether denying Mr. Gonzales's handholding request is the least restrictive means of furthering TDCJ's asserted compelling penological interests.

e) Whether Defendants' policy of evaluating spiritual-advisor requests is neutral and generally applicable and, therefore subject to the *Turner* factors instead of strict scrutiny;

f) After Issue (e) is resolved, whether Defendants' policy violates Mr. Gonzales's free exercise of religion under the First Amendment.

## 10. Exhibits

The parties are separately filing their exhibits and exhibit lists.

## 11. Witnesses

Plaintiff Ramiro Gonzales's witnesses:

- Ramiro Gonzales
  TDCJ Polunsky Unit
  3872 FM 350
  Livingston, TX 77351

  Mr. Gonzales is a death-row inmate and the plaintiff in this case. He will testify as to the sincerity of his religious beliefs. He will also

testify regarding the spiritual significance of to him of his requested accommodation in the execution chamber.

- Mark J. S. Heath, M.D.
  Department of Anesthesiology
  Columbia University
  622 W. 168th St.
  New York, NY 10032

  Dr. Heath is an anesthesiologist with extensive publication and experience regarding lethal injection. He will testify regarding the risks that may exist to an IV line; how those risks are typically mitigated; and what risks holding someone's hand during the lethal injection will pose. He will testify regarding the substance of his report and supplement report that were served and filed.

If any other witnesses will be called at the trial, their names, addresses, and the subject matter of their testimony will be reported to opposing counsel as soon as they are known. This restriction will not apply to rebuttal or impeachment witnesses, the necessity of whose testimony cannot reasonably be anticipated before trial.

<u>Defendants' Witness List</u>

Witnesses who will be called to testify:

- Dennis Crowley
  c/o Leah O'Leary
  Office of the Attorney General
  Law Enforcement Defense Division
  P.O. Box 12548, Capitol Station
  Austin, Texas 78711-2548
  (512) 463-2080

  Warden Crowley is a named defendant. As the former Warden of TDCJ's Huntsville Unit, he

11

has knowledge of the policies and protocols governing TDCJ executions. He has personal knowledge of the compelling reasons, including but not limited to security, furthered by TDCJ's execution protocols.

Witnesses who may be called to testify:

- Bobby Lumpkin, Director of TDCJ-CID
  c/o Leah O'Leary
  Office of the Attorney General
  Law Enforcement Defense Division
  P.O. Box 12548, Capitol Station
  Austin, Texas 78711-2548
  (512) 463-2080

  *Director Lumpkin will be out-of-state on the dates of trial. Defendants' opposed request for him to testify by videoconference from out-of-state is currently pending before the court.

  Director Bobby Lumpkin is a named defendant. He has knowledge of the policies and protocols governing executions. He has personal knowledge of the compelling reasons, including but not limited to security, furthered by TDCJ's execution protocols. Bobby Lumpkin is TDCJ's agency representative regarding execution procedures and policies. Mr. Lumpkin is also the person statutorily designated to supervise and create policy governing executions. TEX. CODE CRIM. PRO. art. 43.14.

  Should additional witnesses become necessary for impeachment purposed, they will be disclosed as soon as practicable.

## 12. Settlement

No settlement negotiations are ongoing in this case, and none are expected.

**13. Trial**

This case will be tried before the bench and therefore will not require a jury. The trial is projected to take two days.

**14. Juror comprehension initiatives**

Not applicable; see *supra* at 13.

**15. Additional required attachments**

The parties will separately file proposed findings of fact and conclusions of law, as well as a memorandum of law, as required by this Court's procedures.

Signed on _____, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge

APPROVED:

June 29, 2022          */s/ Jeremy Schepers*
Date                       Jeremy Schepers (TX 24084578)
                              Supervisor, Capital Habeas Unit
                              Office of the Federal Public Defender
                              Northern District of Texas
                              525 S. Griffin St., Ste. 629
                              Dallas, TX 75202
                              (214) 767-2746
                              jeremy_schepers@fd.org

                              Michael Kawi
                              Assistant Federal Public Defender

                              Steven T. Collis (TX 24122632)
                              Director, Law & Religion Clinic
                              University of Texas School of Law

727 E. Dean Keaton St.
Austin, TX 78705
(512) 475-9090
steven.collis@law.utexas.edu

COUNSEL FOR PLAINTIFF GONZALES

June 29, 2022              */s/ Leah O'Leary*
Date                      Leah O'Leary
                          Assistant Attorney General
                          Attorney-in-Charge
                          State Bar No. 24079074
                          Southern District No. 1563191
                          Leah.oleary@oag.texas.gov

                          Jessica Weltge
                          Assistant Attorney General
                          State Bar No. 24118585
                          Southern District No. 3655973
                          Jessica.Weltge@oag.texas.gov

                          COUNSEL FOR DEFENDANTS